STATE OF MINNESOTA vs. MICHAEL M. MADIGAN.

Argued May 24, 1894. Affirmed June 11, 1894.

No. 8843.

Perjury in affidavit for an attachment.

Where, in an indictment for perjury, it is assigned as perjury that the accused in an affidavit for attachment swore falsely that he was the attorney for the plaintiff in the attachment suit, *held* it is not necessary to allege in the indictment that the accused was an attorney at law.

Statement that deponent is attorney for the plaintiff is material.

*Held*, though the statute does not require it to appear in the affidavit for attachment that such person making the affidavit is the attorney for the plaintiff therein, his right to make it must affirmatively appear somewhere in the attachment proceedings before the writ can rightfully issue, and it may properly appear in such affidavit, and is material, and, if knowingly false, perjury may be assigned upon it.

Materiality not averred but shown by facts stated.

*Held*, it is not necessary to aver in an indictment that matter assigned as perjury is material, when it appears from the facts set out in the indictment that it is material.

Proof that the oath was administered.

*Held*, the production of an affidavit regular in form, with proof that the accused signed it, and that the officer before whom it purports to be sworn to, signed the jurat and affixed his seal, is sufficient evidence on the trial on such an indictment that the accused actually swore to the affidavit.

**Evidence not rendered incompetent.**

If the evidence offered tends to prove the commission of the crime charged in the indictment. it is not incompetent because it also tends to prove the commission by the accused of another crime.

**Charge to jury correct.**

*Held,* the assignments of error as to the charge are not well taken.

**Finding of the trial court on conflicting affidavits, conclusive.**

Where the affidavits in support of a motion are contradicted by counter affidavits, the finding of the court below on the disputed facts is conclusive if there is any evidence to sustain it.

**Jurors drinking intoxicating liquor on a trial for felony.**

Where some of the jurors drank intoxicating liquor during the trial, but before retiring to consider their verdict, *held,* on a motion for a new trial, this raises a presumption against the validity of the verdict, which may be rebutted by showing that in fact such jurors were not intoxicated.

**Juror's ignorance of English as a ground for a new trial.**

*Held,* it is not error to deny a motion for a new trial made on the ground that one of the jurors did not understand the English language, when the moving party had an opportunity to ascertain that fact, and challenge the juror for that cause before he was sworn.

Appeal by defendant, Michael M. Madigan, from an order of the District Court of Redwood County, *B. F. Webber,* J., made March 8, 1894, denying his motion for a new trial.

Defendant was indicted by the grand jury on November 18, 1893, for the crime of perjury in swearing before a Notary Public on April 5, 1893, to an affidavit stating that he was attorney for Peter N. Romnes and that Halver T. Helgeson and Ole H. Mogan were indebted to Romnes in the sum of $500. Helgeson and Mogan were partners dealing in merchandize at Belview and were insolvent and applied for advice to Madigan who was an attorney practising at Redwood Falls. He recommended them to make an assignment under Laws 1881, ch. 148, and overlooking laws 1889. ch. 30, amending that statute, had them make a note to Romnes for $500 antedated April 27, 1892, due November 1, 1892, on which he brought suit in Romnes' name April 5, 1893, and made this affidavit for and obtained a writ of attachment. They then assigned. They owed Romnes nothing and he never employed Madigan. The place of trial upon the indictment was on Madigan's motion changed to Brown County and he was on January 27, 1894, found guilty and

sentenced to confinement at hard labor in the State Prison at Stillwater for the term of three years and three months. He afterwards on affidavits and a settled case moved the court for a new trial, but was denied and he appeals.

*H. J. Peck* and *Jos. A. Eckstein*, for appellant.

The indictment does not allege that the defendant was an attorney at law. It should show that defendant was a person authorized to swear on this particular occasion, and in this particular proceeding. An oath taken by one not authorized to take it is an extrajudicial oath and perjury cannot be assigned upon it. *State* v. *Helle*, 2 Hill (S. C.) 290; *United States* v. *Grottkau*, 30 Fed. Rep. 672; *State* v. *Hamilton*, 7 Mo. 300; *Lamden* v. *State*, 5 Humph. 82.

The statute provides what shall be put into an affidavit for an attachment, but it does not require it to state that it is made by the plaintiff, his agent or attorney. If it is in fact made by one or the other then the law has been complied with. That allegation was immaterial and the court erred in charging the jury it was material. 1 Hawkins P. C. 433, 435; *State* v. *Lawson*, 98 N. Car. 759; *Miller* v. *State*, 15 Fla. 577; *Wood* v. *People*, 59 N. Y. 117; *Pollard* v. *People*, 69 Ill. 148.

There is no evidence that the defendant was actually sworn except the jurat of the notary. The notary was on the witness stand, but was not asked the question. The defendant testified that he presented the affidavit to him and the notary signed it without any other act. The oath was not in fact administered. To constitute perjury the oath should have been administered and the proof should have been clear that the defendant was sworn. *Case* v. *People*, 76 N. Y. 242; *United States* v. *McConaughy*, 33 Fed. Rep. 168.

The court erred in allowing proof that Romnes did not sign the bond for attachment issued in the action and in receiving the bond in evidence. *Hoberg* v. *State*, 3 Minn. 262; *State* v. *Hoyt*, 13 Minn. 132.

The court erred in refusing a new trial on the ground of the misconduct of the jury during the trial. 1st. Because the jury separated after the charge of the court and before they retired to deliberate on their verdict. 2nd. Because of the intoxication of some

of the jurors during the trial.   *Peterson* v. *Siglinger*, 3 S. Dak. 255;.
*State* v. *Bullard*, 16 N. H. 139; *Jones* v. *State*, 13 Tex. 168; *Ryan*
v. *Harrow*, 27 Ia. 494; *Green* v. *State*, 59 Miss. 501.

*H. W. Childs*, Attorney General, *Geo. B. Edgerton*, his assistant,
and *S. L. Pierce*, for the state.

The fact that the person making the affidavit for an attachment
is agent or attorney for the plaintiff must be made to appear, before
the court can order the issuance of the writ.   The person making
the affidavit is required to state that he is the agent or attorney
of the plaintiff in the affidavit, not because expressly required by
the statute, but because required by manifest implication.   Unless.
this fact is stated in the affidavit we submit that it is fatally de-
fective.   *Wiley* v. *Aultman & Co.*, 53 Wis. 560; *Miller* v. *Chicago,*
*M. & St. P. Ry. Co.*, 58 Wis. 310; *People ex rel.* v. *Sutherland*, 81
N. Y. 1; *Ex parte Bank of Monroe*, 7 Hill, 177; *Ex parte Shumway*,
4 Denio, 258.

The indictment is sufficient if it appear from the facts set forth
in it that the matter sworn to and upon which the perjury is as-
signed was material.

In prosecutions for perjury the jurat is *prima facie* evidence that.
the officer administered the oath.   *King* v. *Morris*, 1 Leach 50; af--
firmed in 2 Burr. 1189; *Regina* v. *Turner*, 2 Car. & Kir. 735; *Com--*
*monwealth* v. *Warden*, 11 Met. 406; *People ex rel.* v. *Sutherland*, 81
N. Y. 1; *O'Reilly* v. *People*, 86 N. Y. 154.

CANTY, J.   The defendant was indicted by the grand jury of Red-
wood county, and charged with the crime of perjury in making an
affidavit for attachment in a case entitled "Peter N. Romnes against
Halver T. Helgeson and Ole H. Mogan," commenced in the District
Court of that county, and in which affidavit it is charged he deposed
that he is the attorney of that plaintiff, and that a cause of action
exists in favor of plaintiff and against defendants, the amount of
which is $500, and the ground of that claim is a promissory note
executed and delivered by defendants to plaintiff for that sum, of
which note plaintiff is the holder; said indictment further charging

that all of the same is false. The defendant was convicted and sentenced, and appeals to this court.

1. The first point made by appellant is that the indictment does not state facts sufficient to constitute a public offense because it does not allege that he was an attorney at law when he made this affidavit; that no one but the plaintiff, his agent or attorney, is authorized by statute to make such an affidavit; and that, if he was not authorized by statute to make the affidavit, it was not perjury to make it. This amounts to the proposition that the affidavit might be too false to be perjury; that his swearing falsely that he is the attorney of the plaintiff is not perjury, because it might also be a false statement that he is an attorney at all. This is not like the case of *United States* v. *Grottkau,* 30 Fed. Rep. 672, cited by appellant, where it affirmatively appeared on the face of the proceedings in which the affidavit was made that the person making it was prohibited by statute from doing so. Here it was made to appear by the alleged false statement itself, which is a part of the affidavit, that he was authorized to make that affidavit, and nothing appeared to the contrary in the attachment action or proceedings. The point is not well taken.

2. While the statute requires the affidavit for attachment to be made by the plaintiff, his agent or attorney, it does not require the affidavit to state that the person making it is such agent or attorney when made by him. It is contended by appellant that therefore the statement in the affidavit that he was attorney for the plaintiff, Romnes, was immaterial, and perjury cannot be predicated upon it. It does not necessarily follow that this statement was immaterial because not required to be stated in the affidavit. The statement was of a material fact which it was necessary to make appear affirmatively somewhere in the proceedings before a writ of attachment could rightfully issue, and it was proper to make it appear in this affidavit. Even if it appeared elsewhere, it might also appear in the affidavit as corroborative evidence of the fact, and in such case also it would be material.

3. While the indictment alleges that the affidavit is material, there is no formal averment that the parts of the affidavit assigned as perjury as aforesaid are material, and it is contended that for this reason the indictment is bad. Such formal averment is not neces-

sary when it appears from the facts set out in the indictment that the matter assigned as perjury is material. It does so appear in this case. The indictment sets out the affidavit at length, and avers that it was made for the purpose of procuring an order for the issuance of a writ of attachment in that action then and there commenced. From these facts it sufficiently appears that the matter assigned as perjury was material. A writ of attachment would not issue until the things stated in this matter were made to appear.

4. It is contended that it does not sufficiently appear by the evidence that defendant was actually sworn to the affidavit. The notary public before whom the affidavit purports to have been made and sworn to, testified that defendant signed the affidavit, and he signed it and affixed his seal to it as notary, and identified the signatures and seal. The affidavit was then received in evidence. This was sufficient authentication. Besides, the notary was also the court commissioner, and defendant, on his own behalf, testified that he was retained by the plaintiff in that case, and had authority to make the affidavit. He testified: "I went down to the court commissioner's, and presented it there, and had him make his order for attachment, as is shown by the files in this case. I had the affidavit all written out and signed, and everything, and I handed it to him, and I don't remember just exactly what remark I made or he made, but he says, 'That your signature?' And I said, 'Yes,' and he took the affidavit." He further testified that he paid the commissioner his fee, who, as notary, signed the affidavit for attachment, and, as commissioner, signed the order for attachment. "I had the attachment proceedings made out, and I went up to the clerk of court, and filed them there, and had the writ of attachment issued. Q. Now, Mr. Madigan, at the time you made this affidavit, state whether or not you made it in good faith, believing it to be true when you wrote it. A. I certainly did. If I ever did anything in good faith, it was that. I wouldn't be foolish enough to go and commit perjury for nothing at all, nor for any sum of money. I wouldn't do it." It seems to us that this testimony, both expressly and by every implication, admits that this affidavit was actually sworn to.

Neither do we wish to be understood as holding that it was necessary to prove by oral evidence that the affidavit had been sworn to. In *King* v. *Morris*, 1 Leach, 50, reported also in 2 Burrow, 1189, the

defendant was convicted before Lord Mansfield on the mere proof that the signature subscribed to the affidavit was in his handwriting, and that the jurat was subscribed by the officer before whom the affidavit purported to be sworn to, but no further proof was given to identify the defendant as the person sworn, or that any person was so sworn. It was held by the court that the evidence was sufficient. See, also, *Reg.* v. *Turner*, 2 Car. & Kir. 732. It is true that such presumption may be rebutted by affirmative evidence showing that in fact the affidavit was not sworn to. *Case* v. *People*, 76 N. Y. 242. Merely subscribing to the affidavit is not being sworn to it. *O'Reilly* v. *People*, 86 N. Y. 154. But it is well settled that, when the signatures are proved as above stated, it is presumed that it was actually sworn to by the person whose signature is subscribed as affiant.

5. Romnes, the plaintiff in that action, testified, on behalf of the state, that he never retained defendant to commence that action, never authorized it to be commenced, never was in defendant's law office, and never had any business with him until long after the time that action was commenced. Defendant on his own behalf, and some of his witnesses, testified that Romnes was in his office at that time, and also gave evidence tending to prove that Romnes then and there signed the bond for attachment in that action. Defendant testified that he signed the bond as a witness, and took the acknowledgment of Romnes to it, all of which appears by the bond; that he procured the approval by the court commissioner of the bond, and filed it with the clerk of the court as a part of the attachment proceedings.

On rebuttal, Romnes testified that he did not sign the bond, and Helgeson, one of the defendants in that action, testified that he signed the name of Romnes to the bond in defendant's office, and that Romnes was not there. Other evidence was offered that the bond was a forgery, and thereupon it was received in evidence. All of this evidence was received against defendant's objection and exception, and is now assigned as error.

We are of the opinion that this evidence was competent. It certainly was material on the question of whether or not defendant was the attorney of Romnes. If Romnes had signed this bond, it was

a strong circumstance to prove that defendant was his attorney. If he had not signed it, but the bond was a forgery, it was a strong circumstance to prove that defendant was not his attorney. If the evidence tends to prove the commission of the crime charged, it is not incompetent because it also tends to prove the commission of another crime.

6. We find no error in the charge of the court.

7. On the motion for a new trial, affidavits were read, stating that, after the jury were charged, a recess was taken by the court for about ten minutes, and the jury were allowed to and did separate. This is all denied by counter affidavits, and stated by the court below to be untrue, both on the affidavits and of his own knowledge. This finding is conclusive that no such recess was taken, and that the jury did not separate.

8. Misconduct of the jury was one of the grounds of the motion for a new trial, and affidavits were read in support of the motion, stating that two or three of the jurors were intoxicated,—some of them every night during the trial. This is all denied by a number of counter affidavits, and the court finds it is untrue, and that finding is conclusive.

But one of the jurors in his counter affidavit admits that he drank intoxicating liquor during the trial. "Affiant is in the habit of taking a drink of beer or wine when he feels like it, but never drinks spirituous liquors for other than medicinal purposes; that affiant never mixes his drinks; that, during the trial, affiant did not take more than five drinks in any one day, and, when he did drink, there was a long time between drinks; that affiant has never been intoxicated or under the influence of intoxicating liquors with the exception of one occasion, when affiant was in the army."

The question now arises: Is the drinking of intoxicating liquors by a juror during the trial ground *per se* for a new trial? There are a few cases which so hold, but they are contrary to the great weight of authority, which is that such drinking raises more or less of a presumption against the verdict, which may be rebutted by showing that the juror was not in fact intoxicated. The cases of *State* v. *Bullard*, 16 N. H. 139, and *Jones* v. *State*, 13 Tex. 168, cited by appellant, were cases where the jurors procured the liquor after

they had retired to consider their verdict. In the case of *Ryan* v. *Harrow*, 27 Iowa, 494, cited by appellant, the statement of facts in the commencement of the opinion is as follows: "During the progress of the trial, and after the cause was submitted to the jury, and before they had agreed upon a verdict, two or more of the jury drank intoxicating liquors." It seems to us that, where the intoxicating liquor is procured and drunk after the jury have retired to consider their verdict, it is a very different question. It then involves the misconduct of both the jurors and the officer having them in custody, and will easily raise a presumption of positive bad faith. But if the juror is intoxicated while performing his duties in open court, the parties have an opportunity to observe it and bring it to the attention of the judge. It is also a different question if the juror drank at the expense of the prevailing party, or those working in his interest, which was also claimed by the affidavits and denied by the counter affidavits in this case, and found against appellant by the court below. If, as in this case, the court below finds that the juror was not intoxicated, and the moving party is not in fact prejudiced, the verdict should be allowed to stand. This position is not in conflict with the case of *State* v. *Parrant*, 16 Minn. 178 (Gil. 157), which was a trial for murder in the first degree. In such a case, if the jury are allowed to separate at all during the trial, their conduct while separated is subject to closer scrutiny.

9. That one of the jurors did not understand the English language is also made a ground for a new trial. The affidavits on this question were also conflicting; and for this reason, and also for the reason that it was a ground for challenge, and, by the exercise of reasonable care, the defendant might have discovered the fact, and availed himself of his right to reject the juror when the jury was being impaneled, the point is not well taken.

This disposes of all the questions raised on the appeal, and the order appealed from should be affirmed. So ordered.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 490.)