## STATE v. JAMES REILLY.[1]

October 16, 1931.

No. 28,511.

[1]Reported in 238 N. W. 492.

*Robertson & Rerat,* for appellant.

*Henry N. Benson,* Attorney General, *Edward J. Goff,* County Attorney, and *S. Paul Skahen,* Assistant County Attorney, for the state.

HOLT, J.

Under an indictment charging defendant with driving a motor vehicle upon the public highway while intoxicated, a verdict of guilty was rendered. Defendant moved for a new trial. The motion was denied, and he appeals.

It is claimed that the evidence is insufficient to sustain the conviction. We deem it ample. The state showed that on August 30, 1930, at about 8:30 p. m. defendant and his wife left their home at 3327 Emerson avenue north in Minneapolis, drove to the home of Mr. Keene, 3734 Fremont avenue north, parking their automobile in front of the house headed north. When they arrived, Mr. and Mrs. O'Brien, friends of the Keenes, living across the street, were there. The three families were well acquainted and for several years had visited back and forth. After a few minutes a card game was begun, and Mrs. Keene served each one who desired a glass or mug of home-made beer. Defendant did not take a hand in the game but lay down on a davenport. About 9:30 Mr. and Mrs. Ingerson, friends of the Keenes and O'Briens, called. Another glass of beer was served to those who wished to partake, also a light lunch. Defendant's mug was again filled, but he drank less than half. At the invitation of Mrs. Ingerson and as her partner, he played two or more card games. Defendant and his wife

left near midnight. Defendant drove the car. Instead of turning east when he reached Thirty-eighth street, the nearest route to his home, he continued north on Fremont avenue. A rain and wind storm was approaching. Shortly after midnight his wife was found by a passing automobilist in the middle of Humboldt avenue, near Fifty-first street north, fatally injured, and was taken to the city hospital, where she died. Defendant came home the next morning at about six o'clock and inquired of his sons if their mother came home. After ascertaining that she did not, he sent one of the sons to get the car a few blocks from home, where he had left it when the gasolene gave out. Having learned from the morning paper that a woman had been found injured at Humboldt and Fifty-first street north and taken to the city hospital, defendant sought out Mr. and Mrs. O'Brien and asked them to go with him and his oldest son to the hospital. They went there and then to the morgue, where the body of Mrs. Reilly had been taken. Of these facts there is no dispute.

Mr. and Mrs. Keene and Mr. and Mrs. O'Brien, after describing the acts and talk of defendant during the evening of August 30, expressed the opinion that he was drunk when he came there and drunk when he left. Mr. and Mrs. Ingerson, who were not acquainted with him, expressed the same opinion, though Mr. Ingerson on cross-examination qualified this by admitting that he did not come to that conclusion until he heard what took place as defendant and Mrs. Reilly were leaving, when one of the ladies asked Mrs. Reilly whether she thought defendant fit to drive the car and one of the men offered to drive it, and defendant refused, saying he would drive. A barber who shaved defendant about an hour and a half before he came to the Keene home testified that defendant was then under the influence of liquor.

In a written statement (signed by defendant) in answer to a question asked by a police officer as to what happened at Fifty-first street north and Humboldt avenue, defendant said:

"Well, I was going too fast to suit my wife and she started arguing and told me I was driving too fast; and said, 'You have got too much in you; if you don't go slow, I'll jump out.' She has

said that 20 times before, and I didn't pay any attention to it, and all at once she opened the door and jumped out."

In answer to further questions he stated that he closed the door but neither looked back nor stopped; that he was driving at the speed of 35 to 40 miles per hour; and that he drove on to "South St. Paul and down around by the Falls, and drove alongside the road into an empty lot and fell asleep there for two or three hours." His answer to the inquiry as to being drunk or sober was: "Well, it's pretty hard to say if a person had too much in them; but I didn't have too much in me, because all I had was beer and no strong stuff." He also stated he had drunk five or six quarts of beer at his home. Defendant did not take the witness stand nor did he call any witness in defense.

It is idle to contend that the testimony outlined did not sustain the verdict. The claim that the state's witnesses were not qualified to testify as to defendant's condition because they were themselves under the influence of liquor is without merit. Some of them did not taste the beer at Keene's, and it was for the jury to say how much, if any, the reliability of the testimony of those who had partaken of two or three glasses was affected.

Error is predicated on rulings admitting testimony as to defendant's condition an hour or two before he came to Keene's home; as to his driving away from the nearest route to his home at midnight and in the face of an oncoming storm; as to what happened to his wife; and as to defendant's conduct and admissions afterwards.

Intoxicating liquor does not have an instantaneous effect upon the consumer, and it produces a condition which may last for hours. It affects some persons more than others. It manifests itself in the speech and conduct of the person under its influence. Hence it is proper to receive evidence as to those matters during such time both before and after the particular time he is charged with driving while under the influence of liquor as might be likely to aid the jury in determining whether or not he was then in that condition. It is clear from the course of the trial that the state fixed the time of the offense as beginning when defendant drove

away from Keene's home near midnight. Clearly, evidence, either direct or circumstantial, of his conduct on that drive, indicative of his condition as to being drunk or sober, was admissible. The record reveals no real friction or unfriendliness between defendant and his wife; yet we find when she, as he says, jumped out of a car going at 35 to 40 miles an hour he neither slowed down, stopped, nor looked back to see what happened to her, but continued on away from home, spending the rest of the night in aimless driving or in sleeping in the car. His conduct leads irresistibly to the conclusion that he was drunk.

The claim is made that the testimony concerning defendant's wife evidenced the commission of another crime and was therefore inadmissible. State v. Glazer, 176 Minn. 442, 223 N. W. 769, and cases therein cited. But evidence which is competent, relevant, and material cannot be excluded merely because it also tends to prove the person on trial guilty of some other crime. State v. Madigan, 57 Minn. 425, 59 N. W. 490. In State v. Nelson, 148 Minn. 285, 300, 181 N. W. 850, 856, Justice Dibell, in referring to the rule forbidding the proof of independent crimes by the state, said:

"Of course evidence otherwise competent is not incompetent because it connects the defendant with an independent crime."

So here, the conduct and admissions of defendant for some hours after he drove away from the Keene home was competent to show his condition as to intoxication even though it might tend to prove other offenses than the one for which he was on trial. State v. Mueller, 38 Minn. 497, 38 N. W. 691; State v. Shtemme, 133 Minn. 184, 158 N. W. 48.

Errors are assigned upon the charge, the chief complaint being that the court directed the jury to consider all the evidence received, among which was that relating to defendant's wife and his subsequent signed admission, his talk with Mr. and Mrs. O'Brien and the morgue keeper. In the preceding paragraph the admissibility of such evidence was held proper, and of course all evidence received and not stricken remains in the case and is to be considered by the jury.

There is no reversible error in the record.

The order is affirmed.