## HOLLADAY *v.* DAILEY.

DOWER — *right of* — *not known.* In this territory a wife has no dower in the real estate of her husband. 1 Sess. 363.

MARRIED WOMEN — *power to contract.* By the act of 1861, to protect the rights of married women (1 Sess. 152), a wife may make contracts respecting her separate business and estate ; beyond these limits her contracts are governed by the common law and are therefore void. She cannot warrant her husband's title to realty, or covenant for his act or default in any respect whatever.

POWER OF ATTORNEY *to convey husband's lands executed by wife.* Therefore, where husband and wife joined in a power of attorney, the attorney could do no act under the power which should in any way charge the wife's estate or bind her or those in privity with her.

DEED BY HUSBAND, *without wife, under power from both.* A deed conveying the husband's land, executed in the name of the husband only, by an attorney in fact, under a power proceeding from the husband and wife, is as effectual as if the wife had joined therein.

POWER OF ATTORNEY — *conditions imposed on attorney.* In an authority to convey lands, the principal may impose frivolous and impertinent conditions upon his attorney, and, if the conditions are merely indifferent, and not *malum prohibitum* or *malum in se,* his will shall be observed.

POWER OF ATTORNEY — *condition against public policy.* It is against public policy that land records should be incumbered by invalid conveyances purporting to be executed by persons incapable in law, and so holding out empty promises.

· A *power of attorney,* executed by husband and wife, which confers authority to convey lands of the husband, in so far as it requires that the conveyance shall be made in the name of the wife, imposes a condition which the law will not suffer the attorney to perform.

POWER OF ATTORNEY — *illegal or void condition.* An illegal or void condition inserted in a warrant of attorney may be disregarded by the attorney.

POWER FROM HUSBAND AND WIFE *to sell husband's estate* — *how executed.* A power proceeding from husband and wife, as to the estate of the husband, is well executed in his name alone.

DEED *valid without acknowledgment.* A conveyance is valid between the parties thereto and those having notice thereof though not acknowledged.

In ejectment by a grantor against one who claims title under his grantee, if the execution of the deed is admitted, no question can be raised respecting the certificate of acknowledgment.

DEED — *what is sufficient signing by attorney in fact.* Where the christian name of an attorney in fact is inserted in the power of attorney and in the deed, a signature to the deed, in which the initial letter of such christian name is used, is sufficient.

*Error to District Court, Arapahoe County.*

THE action was ejectment, and the cause was heard upon an agreed statement of facts, as follows: 1st. That the lots mentioned in the declaration in this suit are within, and a part of, the land entered by James Hall, probate judge, etc., under an act of congress, entitled "An act for the relief of the citizens of Denver, in the territory of Colorado," approved May 28, 1864. 2d. That said land so entered was duly patented by the United States to the said James Hall, probate judge, etc., by letters patent, bearing date July 1, A. D. 1868. 3d. That, on the 11th day of August, A. D. 1865, the said James Hall, probate judge, etc., duly conveyed the said lots to the plaintiff, Ben Holladay. 4th. That the defendant, Anthony Dailey, was in the possession of the said lots at the time of the commencement of this suit. 5th. That, on the 27th day of September, A. D. 1866, Bela M. Hughes, acting as attorney in fact, for and in the name of the plaintiff, Ben Holladay, made, executed and delivered a conveyance of said lots (with others) to Richard E. Whitsitt, for a valuable consideration paid to said Hughes. 6th. That, in the execution of such last-named conveyance as attorney in fact for the plaintiff, the said Bela M. Hughes acted under and by virtue of a certain letter or power of attorney from Ben Holladay and N. A. Holladay, his wife, of the date of February 13, 1866. 7th. That, under and through said last-mentioned deed, the defendant, or those under whom he claimed to hold said lots, derive title thereto. 8th. That the genuineness of the signatures to the said power of attorney, and the said last-mentioned deed, as well as the signing of the same respectively, is hereby admitted. 9th. That the only question in dispute between the parties hereto is, the legal sufficiency of the said power of attorney from Ben Holladay and wife to Bela M. Hughes, and the deed thereunder, made from Holladay by Hughes, his attorney in fact, to Richard E. Whitsitt, to pass the legal title of the said plaintiff, Holladay, in and to said lots, to the said Whitsitt. 10th. That

the exhibits hereto annexed, marked "A" and "B" respectively, are copies of the power of attorney and of the deed last above referred to, together with the certificate of acknowledgment thereunto attached, and said copies shall stand in this stipulation for the original. 11th. The matter in controversy in suit is submitted to the court, without the intervention of the jury, either party having the privilege of submitting such a statement of points and brief of authorities as he sees fit, first furnishing the opposite party with a copy thereof. 12th. If the court be of the opinion that the deed and power of attorney herewith exhibited are sufficient to convey the legal title of Holladay to said lots to Whitsitt, then judgment is to be given for the defendant; if the court be of the opinion they are insufficient to convey said title, then judgment is to be given for the plaintiff.

The substantial parts of the power of attorney referred to are as follows:

"Know all men by these presents that we, Ben Holladay and N. A. Holladay, his wife, of the State of New York, for and in consideration of the sum of one dollar to us in hand paid, as well as other considerations us thereunto moving, have this day constituted and appointed Bela M. Hughes, of the State of Kansas, our true and lawful agent and attorney in fact for us, and in our names to sell and convey to any purchaser or purchasers for such price or prices as to him may seem best, all or any lots of ground in Denver city, Colorado, in the county of Arapahoe, in said territory, the title to which is now vested in said Ben. Holladay,   *   *   *   and the said Ben Holladay and N. A. Holladay, his wife, do hereby authorize said Hughes to proceed to sell said property on such terms as he may consider best for their interest; this power to sell said property and real estate, or any part of it, to continue until the whole of the said property or real estate is sold by their said attorney and agent, and shall extend also fully to all out lots or parcels of ground in and around the said Denver city, and it is provided that, in case of the death of either of the

said parties making this power of attorney, no further power shall be necessary to our said attorney in fact and agent, to enable him to complete conveyances for property then sold, or to proceed to sell the same or any part thereof thereafter, but he shall proceed, notwithstanding, to sell and convey said property until the same is all disposed of by him, * * * hereby ratifying and confirming all that the said Hughes may do and perform in the premises under this power of attorney to him given."

The first clause of the deed to Whitsitt was as follows: This indenture, made this 27th day of September, in the year of our Lord, eighteen hundred and sixty-six, between Ben Holladay, of the city and State of New York, by Bela M. Hughes, his duly authorized attorney in fact, party of the first part, and Richard E. Whitsitt, of the city of Denver, party of the second part, witnesseth, etc., etc. The deed was signed, "Ben Holladay, by his attorney in fact, B. M. Hughes." The certificate of acknowledgment attached to the deed was as follows: "On this twenty-ninth day of September, in the year of our Lord, one thousand eight hundred and sixty-six, before me, a notary public, in and for the county aforesaid, personally came Ben Holladay, by Bela M. Hughes, his attorney in fact, personally known to me to be the same person described in and who executed the within conveyance, and acknowledged that he freely and voluntarily executed the same as the attorney of Ben Holladay, and as the free and voluntary act and deed of the said Ben Holladay therein described."

The objections to the deed from Holladay to Whitsitt were as follows:

First. The attorney in fact deviated from his warrant of authority in making the deed in controversy ; and, thereby, made a deed that was entirely unauthorized.

Second. Said deed was not acknowledged in accordance with the laws then in force in Colorado.

Third. Said deed was not subscribed by the attorney in fact, as the laws of Colorado then required.

The district court gave judgment for defendant.

HALLETT, C. J., took no part in the decision.

Mr. ALFRED SAYRE, for plaintiff in error.

Mr. B. M. HUGHES and Messrs. CHARLES & ELBERT, for defendant in error.

WELLS, J.    I will consider first the question, whether the letter of attorney under which Hughes acted, or assumed to act, on the conveyance to Whitsitt, imposed as one of the conditions to the exercise of his authority, that the conveyances made in pursuance thereof should be in the names of Holladay and his wife.

This is purely a question of interpretation, and the intent of the instrument is to be derived solely from the words used therein, read in the light which the situation of the parties, so far as this appears, affords.

It is perfectly clear, as we think, that, if the attorney had united Mrs. Holladay with her husband, as grantor, on the conveyance which he assumed to execute, it could have effected no purpose, for, though the wife united in the letter of attorney, she had no dower in the lands, as it would seem was supposed; it has not been shown that she had any other estate vested or contingent upon which her conveyance could operate, and we will not presume such estate in the absence of proof thereof; neither could she have bound herself by any covenant in the conveyance, for, under the statute, as it then stood, the power of the wife to contract extended only to the sale and conveyance of her separate estate, real and personal, and to the carrying on and contracting about any trade or business conducted upon her separate account.    Acts 1861, p. 152, §§ 2, 3, 10.    All the contracts of a *feme covert* beyond these limits were still, as they were at common law, absolutely void.    The statute did not authorize the wife to warrant her husband's title to realty or to covenant for his act or default in any respect whatever ; and, in this case, the wife having no estate in the realty, which she could convey, and having no power to engage in regard to her husband's estate, it is clear that

she could not authorize another to so convey or engage for her, and the letter of attorney was, therefore, as to her, absolutely void. It was as if her name had not been inserted in it, or subscribed to it, the attorney could do no act thereunder which should in any way charge her estate, or bind her, or those in privity with her.

The conveyance which the attorney did make was quite as effectual to this, as if her name had been inserted therein, and by him, or by herself, indeed, subscribed thereto.

Nevertheless, if the husband, by the letter of attorney, has required that all conveyances thereunder shall be in the joint names of himself and the wife, then, howsoever empty and profitless the form, the attorney was not on this account merely' at liberty to disregard it. The principal, in an authority to convey lands, may, I suppose, lawfully require that the conveyance shall be upon parchment or attested by certain witnesses, or shall be by deed indented, and not otherwise, or he may impose any other frivolous and impertinent condition which caprice may suggest; and the mere vanity and ineptitude of the condition will not avoid it; for, though the law requires it not, yet the owner of the lands may; and if the condition be merely indifferent, and not either *malum prohibitum* nor *malum in se*, his will shall be observed.

But here, as I think, the condition which it is said was imposed upon the exercise of the agent's authority was not only vain, but illegal; for it is manifestly against public policy, that our land records should be incumbered by invalid conveyances, purporting to be executed by persons incapable in law, and so holding out empty promises. If such conveyances be tolerated — if one may do by another what he may not do in his own person — if the husband may, by way of condition or in any other way, authorize the attorney whom he alone has constituted to subscribe the wife's name to a deed by which she cannot be bound, inserting therein covenants and recitals which assume or purport to be hers, it may probably happen that ignorant and incautious persons will be led to purchase the estate on the faith

of the wife's supposed ability and liability to respond in damages in case of the failure of title, or on the faith of some imagined estoppel. If one may, in this manner, assume to have authorized his wife's name to be subscribed to a conveyance or covenant, I do not see why he may not exercise the same liberty with that of his neighbor. Certainly, the recognition of such a power or right will serve no good purpose, and it may breed uncertainty in titles and unprofitable litigation.

I am therefore of opinion that the construction for which the counsel for plaintiff in error has so ingeniously contended will render the letter of attorney nugatory, for, by this construction, it imposes a condition precedent, which the law will not suffer the attorney to perform, and it is said that if one grant an estate upon condition precedent which it is unlawful to perform, here, both the estate and the condition are void, for an estate can neither commence nor increase upon an unlawful condition (Shepherd's Touchstone, 132), and so I conceive is the law where a power is sought to be created upon like condition. Though, possibly, it may better be likened to a bond with condition repugnant to mere positive law, in which case it is said the condition only is void, and the bond shall stand single (2 Bl. Com. 300), but I think not.

Therefore, to effectuate the manifest purpose of the principal — namely, to convert these lands, which were at a distance from his place of residence, and so beyond his personal supervision and control, into money — and in order that the letter of attorney may not utterly fail of effect, I think we are authorized to read it as if the name of the wife were not contained therein (as in effect it is not) and as if the authority had been in terms "for me and in my name to convey," etc.

And this, though it may seem to do violence to the text of the instrument, is warranted by authority; for it is said that: "If divers join in a deed and some are able, and some are not able, this shall be said to be his deed alone that is able" (Shepherd's Touchstone, 81), that is to say, the

words of grant, confirmation and the like, which are written in the plural shall be read in the singular, for if taken in the plural, there are none to whom they can be ascribed.

As to the other questions which have been argued, we think that the conveyance of the attorney, under which the defendant derives title, was well enough executed, and that whether it was acknowledged in conformity with the statute or not is a matter of indifference, for the acknowledgment is but a means of proving the execution and authenticating the record, when the instrument shall be thereafter recorded; and the statute which requires it being in the affirmative, and without any negative implication to exclude the common law, the conveyance will be valid, as between the parties thereto and those having notice thereof, even though not acknowledged at all.

The judgment of the district court is therefore affirmed.

*Affirmed.*