KOMP, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 21—June 21, 1906.*

*Perjury: False affidavit: Evidence: Administration of oath: Examination of witnesses by court: Order of proof.*

1. The official certificate of a notary, with proof of the authenticity of his and the affiant's signatures, is *prima facie* proof of the proper execution of an affidavit; and in a prosecution for perjury based thereon evidence that the oath was never actually administered must be strong and convincing to authorize the court to take the case from the jury.
2. Although, in such a case, the defendant testified positively that the notary never administered any oath, and the notary could not testify to a distinct remembrance of the exact facts of the transaction, which occurred about three years before the trial, the official certificate and the notary's testimony as to his practice and his recollection as aided by the document itself are *held* sufficient to sustain a conviction.
3. The trial judge may, in the exercise of a sound discretion, examine or cross-examine a witness in a criminal case; but the power should be most carefully exercised for the purpose of making clear that which is not clear, and the questions should

not betray bias or prejudice nor carry to the jury the impression that the judge has made up his mind as to the facts.

4. The question being as to the truth of an affidavit that fifty per cent. of the capital stock of a trust company had been paid in in cash, evidence that the affiant, who held a large part of the stock, was in straitened circumstances at and prior to the time the stock was issued was admissible, and error in admitting such evidence before any proof as to the amount of stock held by the affiant was cured by the subsequent production of such proof.

ERROR to review a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Affirmed.*

*Martin J. Gillen,* for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, A. C. Titus,* assistant attorney general, and *Robert Verne Baker,* district attorney of Kenosha county, and oral argument by *Mr. Titus.*

WINSLOW, J.    *Frank S. Komp* was prosecuted and convicted of the crime of perjury, and brings his writ of error to reverse the judgment.

It appeared on the trial that in the month of October, 1902, *Komp* organized an incorporated trust company at Kenosha, Wisconsin, with a nominal capital stock of $50,000, and became president of the company; that on or about October 30, 1902, an affidavit was prepared by Mr. Peter Fisher, a lawyer and notary public residing at Kenosha, as required by the terms of sec. 1791*d;* Stats. 1898, stating that fifty per cent. of the capital stock of said corporation had been paid in in cash; that this affidavit received the signature of *Mr. Komp* and purports to have been sworn to before Mr. Fisher on said last-named date, and was afterward filed in the office of the secretary of state; and that no more than $1,000 of the capital stock had in fact been paid in in cash at that time.

The first and most serious contention is that the evidence was not sufficient to justify a finding that the affidavit was ever in fact sworn to.    It bore the jurat and official signature

and seal of Mr. Fisher, but *Komp* testified that it was drawn
by Mr. Fisher at his request and delivered to him (*Komp*)
October 30th, that he took it to his own office and there signed
it, and a day or two afterward returned it to Mr. Fisher,
signed, and told him it was all right, and Mr. Fisher took it
but never administered any oath.   On the other hand, Mr.
Fisher testified after examination of the paper that to his best
belief and judgment he administered the oath to *Komp* on or
about the date of the jurat.   On cross-examination he testified
that he was a busy man, and administered many oaths; that
he kept no record of them; that he did considerable work of
this nature for *Mr. Komp;* that his testimony was based on the
fact that he made a practice not to put his name to a jurat un-
less he swore the affiant, and upon the fact that he found his
name signed to the jurat and the affiant's name signed to the
affidavit; that he had no definite recollection independent of
the papers, and that his best judgment, based upon the facts
stated, was that the oath was administered.   Upon rebuttal,
after hearing the testimony of *Mr. Komp,* Mr. Fisher was
again put upon the stand and testified as follows:

"*A.* My best recollection of that transaction, since I have
heard *Mr. Komp* testify, is this: That the affidavit was pre-
pared by us and either sent to or delivered to *Mr. Komp;* that
he brought it back to my office the same day, or very soon after-
wards; that he said he had read over the affidavit, and that
it was all right; showed me his name; said he had signed it.
We were standing by the table in my waiting room, and I
said, '*Mr. Komp,* you swear that the facts set forth in this
affidavit are true?' and he said, 'Yes.'   Then I took it and
went into the back room and I don't think *Mr. Komp* came
in; signed the jurat and put on the seal.   I am not abso-
lutely sure of this, but from his statement this afternoon it
seems to me that is the way the transaction took place.   I
would like to say in connection with that, that on account of
certain occurrences at one time some years before it, when Mr.
Cavanaugh and I were partners, we had said that we never
would put our names, either one of us, to a jurat without

swearing a party. I am trying ever since to carry that out. I am relying somewhat upon my practice about that, perhaps full as much as my memory, in this specified case.

"*Cross-examination:* Q. Standing alone on your recollection of the transaction, will and can you deny positively that what *Frank S. Komp* stated here is not true? A. I deem my answer too important in this case to say that I can. It is my best judgment that it is not true, but it is important, and I will not say that he cannot, in any event, be right."

The official certificate, with proof of authenticity of the signatures of the affiant and the officer, was sufficient *prima facie* proof of the proper execution of the affidavit. *State v. Madigan,* 57 Minn. 425, 59 N. W. 490; *Comm. v. Warden,* 11 Met. 406. Mere want of present recollection as to the exact circumstances under which the oath was taken will not necessarily control the presumption of fact arising from the official certificate. *Comm. v. Kimball,* 108 Mass. 473. It is frequently held that the evidence must be perfectly clear, convincing, and satisfactory in order to justify a court in holding that an official certificate of acknowledgment of a deed is false. *Linde v. Gudden,* 109 Wis. 326, 85 N. W. 323. This presumption of fact arising from the certificate may, of course, be rebutted by evidence that the oath was never actually administered, but such rebutting testimony must necessarily be strong and convincing to authorize the court to take the case from the jury. Ordinarily the issue thus presented will be an issue for the consideration of the jury. Were the rule otherwise it would be very easy to defeat a prosecution for perjury when the affidavit was sworn to before a busy man. Such a man will rarely have personal recollection of the fact, and the best that he can do will probably be to testify generally to his practice and his recollection, as aided by the document before him. The testimony of Mr. Fisher bears the impress of the testimony of a careful, conscientious officer, one who desired to state exactly the facts within his recollection, no more and no less. It really is more persuasive than an at-

tempt to testify to a distinct present recollection of the exact facts of a transaction occurring in the midst of active business affairs some three years before. We entertain no doubt of its entire sufficiency, in connection with the official certificate, to sustain the verdict rendered.

It appears from the record that the circuit judge of his own motion carefully examined the accused as to the circumstances of his delivery of the paper to Mr. Fisher, and this examination is now complained of as tending to prejudice the accused in the minds of the jury by giving them to understand that he disbelieved his version of the transaction. The right of a trial judge, in the exercise of a sound discretion, to examine or cross-examine a witness cannot be doubted. It is a right that is sometimes most valuable in the administration of justice, but it should be most carefully exercised, and the questions put should not betray bias or prejudice, nor carry to the jury the impression that the judge has made up his mind as to the facts. The questions should be framed to make clear that which is not clear. Within these limits there can be no just fault found with the fact that the trial judge asks some questions of a witness. *Yanke v. State,* 51 Wis. 464, 8 N. W. 276; 12 Cyc. 539; *State v. Hazlett* (N. Dak.) 105 N. W. 617. We have examined the questions complained of here, and are clearly of opinion that the trial judge did not transgress the rules above indicated in his examination of the accused.

It was necessary for the state, in making its case, to show that as a matter of fact fifty per cent. of the capital stock of the trust company had not been paid in in cash at the time the affidavit was made. In order to show this fact the state called two witnesses whose testimony tended to show that they were acquainted with *Komp* during the years 1901 and 1902, and had business dealings with him, and that he was in straitened circumstances financially during all of this time. At the time this testimony was offered there had been no testimony intro-

duced tending to show that *Mr. Komp* owned any stock in the trust company, so that it was not properly admissible at the time it was offered. It appears, however, that this departure from the regular order of proof resulted from the fact that there was no witness at hand at the opening of the trial who could identify the books of the trust company. Later in the course of the state's case a witness was produced who was the treasurer of the trust company, and who did identify the books, and they were offered and received in evidence. From the stock certificate book so introduced it appeared that *Komp* held 120 shares of the stock, of $100 each, as trustee, and eighty shares individually, which had been issued to him in October, 1902, and were held by him at the time the affidavit was made. The fact that he held eighty shares individually certainly made the proof of his financial condition just prior to the issue of the shares admissible upon the question whether it was in fact paid for in cash, and cured the error in the original ruling. It was afterward fully proven by the treasurer that no more than $1,000 of the stock was paid in cash, and *Komp,* when on the stand in his own behalf, admitted that the statement in the affidavit that $25,000 had been paid in cash was false.

There are no further errors claimed which require specific treatment. The accused seems to have had a fair trial without prejudicial error, and we see nothing to indicate that a just result was not reached.

*By the Court.*—Judgment affirmed.