No. 13,452.

Chilton et al. *v*. The People.
(35 P. [2d] 870)

Decided July 2, 1934.

Mr. Thomas H. Gibson, Mr. Harry G. Saunders, for plaintiffs in error.

Mr. Paul P. Prosser, Attorney General, Mr. Charles H. Queary, Assistant, for the people.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

December 9, 1933, upon an information charging them with false pretenses and confidence game, the plaintiffs in error, defendants below, were tried and convicted in the Denver district court. After motion for a new trial was overruled, a sentence of from two to ten years in the state penitentiary was imposed upon the verdict. While numerous errors are assigned for reversal, some with probable merit, only one challenges our attention for the disposition of this case. That assignment is No. 16 and is as follows: ''The court erred in refusing to grant defendants' motion for a directed verdict on the remaining count of the information after the district attorney had withdrawn the first count thereof at the close of the people's case.''

The plaintiffs in error will be referred to as Larson and Chilton.

The original information was filed against Larson August 15, 1933, charging him with confidence game. August 24, 1933, a new information was filed against Larson and Chilton jointly, charging them with confidence game, which information was amended October 24, 1933, to include a count on false pretenses.

The facts are substantially as follows:

In January, 1933, one Isom turned over to Louis Ell the furnishings in the Rockland Hotel, located at 1435 Tremont street, Denver, Colorado, in trade for furnishings in a Grant street property, and five lots, then owned, and transferred to him, by Clara Ell, a sister of Louis Ell. A note for $4,000, secured by mortgage on the furnishings, was given to Clara Ell, and Louis Ell went into possession of the hotel. He continued in possession and managed the hotel until June 13, 1933, at which time the rent was in arrears in the sum of $450 and taxes in the sum of $278. He was drinking heavily, the hotel was not paying expenses, and his sister, Clara Ell, holder of the note, was anxious to dispose of the note and mortgage. She went to Chilton, who had been acting as her attorney for several months, and Chilton made efforts for about a week to find properties for which she might exchange the note, but with no results. Larson, who had heard through some person at the court house, that Mrs. Ell wanted to dispose of the hotel and note and mortgage, after phoning to her, went to see Mrs. Ell at the hotel about June 6th or 7th, where he met her for the first time, as well as Mr. Isom who happened to be there at the time talking to Mrs. Ell about the deal. Mrs. Ell referred Larson to Isom for a statement of the situation. Larson said he thought he could sell the hotel to Pueblo people, and that it was his purpose to make a trip to Pueblo with that in view. Isom told Larson that even if he, Isom, made a deal with Mrs. Ell for the hotel, it would be for sale anyway, and wanted Larson to go to Pueblo, which

Larson did without results. After his return, Larson called on Mrs. Ell, who asked him what further he had to offer. He told her he could have stock in the Triangle Reporting Company issued to her by one W. B. Thompson who was then in Pierre, South Dakota. He gave her a circular concerning this stock, which, on the following day, she took to Chilton to consult him concerning its value. According to her testimony, Chilton and Larson each said they did not know each other, and Chilton told her he had heard of the stock before and it would be a good deal if she could get stock in this company, and that later Chilton told her the stock had a value of $1.00 per share. Chilton contacted Larson, and thereafter on June 13, 1933, Chilton called Mrs. Ell and requested her to come to his office. When she arrived, Larson was there and Chilton had prepared a contract, which was signed by Larson and Mrs. Ell, for the assignment of the note and mortgage to Larson, Larson agreeing to cause to be issued to her 3,000 shares of stock in the Triangle Reporting Company and to secure for her $1,500 in cash within 90 days, and to deposit in escrow with Chilton an additional 1,000 shares to secure his agreement to deliver the $1,500 cash within 90 days, and it was agreed that upon payment of the $1,500 said stock was to be returned to him.

After the signing of the contract, Mrs. Ell caused possession of the hotel to be delivered to Larson, and assisted him in securing a loan of $450 on the furnishings by going with him and personally releasing the $4,000 mortgage given her by her brother, Louis Ell. Larson caused the eleven tenants then occupying the hotel, who were not paying their rent, to be ousted, cleaned up the hotel and put a new manager in charge, and in about 60 days had the hotel on a paying basis with 33 new tenants. Larson was preparing to go to Trinidad to raise the $1,500 and before taking the train was arrested on August 15th on the information sworn to by Mrs. Ell. On August 24th she swore to a new information against both

Larson and Chilton. Chilton was arrested, and, on October 24th, the joint information was amended to include a false pretense count.

The statutes pertinent here are: Section 6930, Compiled Laws of 1921. "If any person or persons shall knowingly and designedly, by any false pretense or pretenses, obtain from any other person or persons any chose in action, money, goods, wares, chattels, effects or other valuable thing whatever, with intent to cheat or defraud any such person or persons of the same, every person so offending shall be deemed a cheat, and upon conviction, shall, where the property obtained is over the value of twenty dollars, be imprisoned in the penitentiary not to exceed ten years; and where the value of the property obtained is twenty dollars or less, be fined in any sum not exceeding one thousand dollars, or imprisoned in the county jail not to exceed six months, or both; and in all cases where the value of the property obtained is twenty dollars or less, justices of the peace within their several counties, shall have jurisdiction of the above offense, subject to the right of appeal, as provided by law"; and chapter 93, Session Laws of 1923: "Every person who shall obtain, or attempt to obtain, from any other person or persons, any money or property by means of or by the use of brace faro, or any false or bogus checks, or by any other means, instrument or device, commonly called confidence games, shall be liable to indictment, and on conviction shall be punished by imprisonment in the penitentiary for any term not less than one year nor more than twenty years * * *."

A careful reading of the testimony in this case discloses no prearranged, or any other, scheme or plan between Larson and Chilton to do or say the things complained of by the prosecuting witness. Believing her testimony alone, the most discrediting statement that can be charged to Larson and Chilton was their disclaimer to her of a prior acquaintance with each other. This was a collateral matter, but unfavorable evidence of

a pretense that was false. There is no direct evidence of any concert of or joint action between these men in connection with the transaction or that they were interested with each other therein. There is no evidence to show that Chilton was interested in obtaining or did obtain any benefit from the deal, or that he did anything other than act as attorney for the complainant. The most that is claimed that either Larson or Chilton did was to make statements concerning, and give opinions as to, the value of the stock received by the complainant. Statements of opinion, or estimates, or promises, are not actionable, and provide no basis for prosecution under the false pretense statute. *Morton v. People*, 73 Colo. 576, 216 Pac. 703.

█ This was undoubtedly recognized by the district attorney when he asked for, and was granted, leave to withdraw the false pretense count of the information. Larson and Chilton objected, and moved for a directed verdict as to the remaining or confidence game count, and raised the defense of autrefois acquit. We think the motion should have been sustained. Withdrawal of the false pretense count, which the prosecution had the undoubted right to do after the close of the people's case, was equivalent to an acquittal. *Davidson v. People*, 64 Colo. 281, 170 Pac. 962.

This case, if it presented one of crime at all, does not fall within the class intended to be defined under chapter 93, Session Laws of 1923 above quoted. That statute is an amendment, as to the penalty, of section 6856, Compiled Laws of 1921, which is to be found under the act defining gambling and confidence games and providing penalty therefor.

█ Confidence game, as defined in the act, must necessarily be played by confidence men, as therein described and defined. The statute defining confidence men being section 6860 of the Compiled Laws, is as follows: "Any person or persons who shall obtain or procure, or attempt to obtain or procure, from any other

person, any money or valuable thing, by means of any game or games, or any fraudulent pretense or pretenses, practice or practices, scheme, trick, device or deception, and any person who shall confederate, conspire or combine with any bunco steerer or other person or persons for the purpose and with intent to procure or obtain, or to attempt to procure or obtain from any other person or persons any money or other valuable thing, by means of any such game or games, fraudulent pretense or pretenses, practice or practices, scheme, trick, device, or deception, shall be deemed a confidence man and punished accordingly.''

■ Larson and Chilton were acquitted of the false or fraudulent pretense charge, as that offense is set out in the definition of confidence men, and do not by any view of the evidence, come within the other requirements of confidence men as so defined. The evidence in this case shows a total lack of any other means, instrument or device, commonly called confidence games, other than mere words. ''Something more than mere words, however false and fraudulent, is necessary to constitute the swindling operation essential in the confidence game.'' *Wheeler v. People*, 49 Colo. 402, 113 Pac. 312.

■ The stock involved in this transaction was probably of no value, and the conditions at the hotel presented such an uncertainty that the complainant was anxious to trade her note. She voluntarily entered into an agreement whereby she agreed to wait 90 days for $1,500 cash, but this agreement she failed to keep, and so far as the evidence shows, Larson was deprived of his chance to make good, by his arrest prior to the expiration of the 90-day period. His intentions may have been good and his agreement might have been fulfilled had he been afforded the stipulated time. We think the evidence does not support the verdict.

Judgment reversed.

Mr. Justice Butler and Mr. Justice Bouck concur in the conclusion.

MR. JUSTICE BURKE and MR. CHIEF JUSTICE ADAMS dissent.

MR. JUSTICE CAMPBELL not participating.