No. 15,033.

Shepherd v. The People.
(129 P. [2d] 104)

Decided July 6, 1942.    Rehearing denied September 14, 1942.

Mr. Fancher Sarchet, Mr. Herbert M. Baker, Mr. Jerome Smith, for plaintiff in error.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. James S. Henderson, Assistant, for the people.

*En Banc.*

Mr. Justice Bock delivered the opinion of the court.

Plaintiff in error, to whom we hereinafter refer as defendant, was charged in an indictment as follows: "That F. E. Shepherd, on or about the 23rd day of November, 1937, in Prowers county, did then and there

unlawfully and feloniously obtain from Prowers county, Colorado, its money, to-wit, the sum of three hundred twenty-two dollars and fifty cents ($322.50) in lawful money of the United States of America, of the value of three hundred twenty-two dollars and fifty cents ($322.50), by means and use of the confidence game." Of this charge the jury returned a verdict of guilty, and judgment was entered accordingly, which judgment we are asked to review on writ of error.

The grounds for reversal may be summarized in a single proposition that the evidence did not sustain the charge. It is elementary that a defendant can be convicted only of the crime with which he is charged, and no other. Evidence of the commission of a crime different than that charged will not sustain a verdict of guilty thereon.

The pertinent portion of section 222, chapter 48, '35 C.S.A., upon which the indictment herein is based, reads as follows: "Every person who shall obtain * * * from any other person or persons, any money * * * by means of * * * any false or bogus checks, * * * shall be liable to indictment, and on conviction shall be punished by imprisonment in the penitentiary for any term not less than one year, nor more than twenty years." On review we assume that the jury adopted that evidence, or any reasonable inference therefrom, which supports its verdict of guilty. *Hershorn v. People,* 108 Colo. 43, 46, 113 P. (2d) 680.

A brief summary of the evidence, as disclosed by the record before us, is as follows:

For a number of years defendant was the employed auditor of Prowers county, making audits of all its offices. During that time Clark, the county treasurer, who was a very good friend of defendant, cashed a number of personal checks, not here involved. In the fall of 1937 defendant discovered an approximate shortage of $6,000 in the accounts of Clark as county treasurer, but did not report the same to the county commissioners,

because he thought that Clark was very well 'off financially, and promised to repay the shortage. In the meantime he suggested to Clark that he place an I.O.U. in the amount of that shortage in the cash drawer of the treasurer. At about the same time defendant obtained from Clark, as county treasurer, the sum of $322.50 on what is known as people's exhibit A, to which we hereinafter refer in more detail. The record is not entirely clear whether this sum was paid by Clark to defendant after discovery of the shortage in Clark's account, but, under the circumstances, for our purpose, we assume that it was. For this cash there was substituted and placed in the cash drawer of the treasurer, people's exhibit A, which is an undated check in the sum of $322.50, signed by defendant, and in which the space for the name of the payee is left blank. This check was not endorsed by anyone, never was presented for payment, and Clark knew that it would not be cashed until defendant informed him to "run it thru." This is the alleged false or bogus check upon which the charge here involved is predicated. Defendant knew that the money he received on this check belonged to Prowers county; however, the county commissioners had no knowledge of the use of the check, nor of the transaction related thereto, until confession was made by Clark in November, 1939. In the meantime another auditor was retained in 1938, whose audit did not show the presence of this check as a cash item in Clark's accounts, and who failed to find any shortage. Not until November, 1939, did the second auditor ascertain that there was a shortage in Clark's account in the sum of approximately $47,000, and the latter thereafter pleaded guilty to the charge of embezzlement.

There were other similar checks negotiated with Clark in the same manner, in at least two of which the facts are substantially different, in that they were explained by defendant on a bona fide basis, which explanation was not controverted. That defendant had an account

in the bank upon which the checks, including exhibit A, were drawn is not questioned, but there is evidence that the balance in the bank was not sufficient to meet their payment. Most of the facts here recited are emphatically denied by defendant, but, as already stated, after verdict we assume them to be true.

One of the contentions of counsel for defendant is that no person can be convicted under section 222 unless he is a confidence man as defined in section 226, chapter 48. In our opinion, this contention is without merit. In support thereof counsel cite the case of *Chilton v. People,* 95 Colo. 268, 35 P. (2d) 870. In that case it was held that the facts did not bring it within the class defined in said section 222, while here the charge is within said section; moreover, only one justice concurred in the Chilton opinion, and it therefore cannot be considered as a precedent binding upon us.

The question whether the check in the instant case is a false or bogus writing is of serious import. Section 222 specifies the use of some false or bogus instrument or device—in this instance an alleged check— as distinguished from mere words, however false or fraudulent. *Wheeler v. People,* 49 Colo. 402, 407, 113 Pac. 312; *Powers v. People,* 53 Colo. 43, 46, 123 Pac. 642; *Elliott v. People,* 56 Colo. 236, 238, 138 Pac. 39; *Davis v. People,* 96 Colo. 212, 215, 40 P. (2d) 968. See, also, 22 Am. Jur., p. 482, §74. Not every fraud is a confidence game within the meaning of the statute. *Davis v. People, supra.*

A careful study of the record impels us to say that exhibit A was not a false or bogus instrument within the purview of section 222, supra. This also applies to the checks admitted in evidence to show other offenses. Exhibit A was exactly what defendant represented it to Clark to be, and the latter accepted it as a check in the nature of an I.O.U., to be held until defendant told him to "run it thru." Counsel for the people admit that Clark was not in any manner misled or deceived by defendant.

The use of the county funds, and as such obtained by · defendant through Clark, was entirely unlawful, but we here are concerned only with the crime charged, and if another crime was committed by defendant, which is a matter not now before us, action therein rests with the district attorney, whose responsibility it is. The county treasurer, in the light of the record before us, had no authority to pay out the funds of the county in the manner in which he did in this case, but there are no facts from which we are able to say that defendant obtained the amount of $322.50 from Prowers county by means of false or bogus checks, and the attorney general impliedly concedes that he has found no authority to support such a position. Defendant disclosed to Clark, when he gave him exhibit A, that he did not have sufficient funds in the bank to meet the check, and, the disclosure being made at the time of the transaction, no crime of confidence game by means of a false or bogus check was committed. *Wheeler v. People, supra; Pierce v. People,* 81 Ill. 98; *Huckaby v. State,* 22 Okla. Crim. 376, 211 Pac. 525, 526. In the case of *Williams v. Territory,* 13 Ariz. 27, 108 Pac. 243, 27 L.R.A. (N.S.) 1032, the offense of confidence game was not involved. What is more important, in that case the defendant obtained money on his check, drawn on a bank in which he never had funds.

We recognize that the unlawful transactions disclosed by the evidence in which Clark and defendant participated, and through which money of Prowers county was misappropriated, cannot be condoned; but our consideration is limited to the charge upon which defendant was indicted and tried, and the facts appearing in the record do not support that charge.

In view of our conclusions, it is unnecessary that we consider other contentions presented by the parties. The judgment is reversed and the case remanded, with directions to dismiss the indictment.

Mr. Justice Knous, Mr. Justice Burke and Mr. Justice Jackson dissent.

Mr. Justice Knous dissenting.

I cannot concur in the reversal of the judgment in this case. I am satisfied that the facts established by the people's evidence, upon which the verdict of the jury placed the stamp of verity, clearly bring the transaction within the pale of the inhibitions of section 222, chapter 48, '35 C.S.A., which makes it a felony for any person to obtain "from any other person or persons any money * * * by means of * * * any false or bogus checks, or by any other means, instrument or device, * * *." The devices by which this statute may be violated "are as various as the mind of man is suggestive." "Obtaining of money by means or use of what is false or bogus is the offense aimed at." *Wheeler v. People*, 49 Colo. 402, 113 Pac. 312, Ann. Cas. 1912 A. 755. Here defendant obtained the money of Prowers county by means of Exhibit A, an ordinary form of bank check for $322.50, drawn on the First National Bank of Fort Morgan, Colorado, signed by defendant and complete in all details, except that the blank spaces provided in the form for the insertion of the date and name of the payee were unfilled. The people contend, as the jury concluded, that in fact Exhibit A was a false and bogus check. In *Williams v. Territory*, 13 Ariz. 27, 108 Pac. 243, 27 L.R.A. (N.S.) 1032, a leading authority in this field, it was held under a statute very similar to ours, that a check is false or bogus when it is a wilfully untrue written order directing a bank to pay money on demand. In that opinion it is stated, "bogus is defined as meaning 'spurious, fictitious, sham.'" That the written devices by means of which defendant secured the money of the people of Prowers county, come within these definitions seems to me to be established overwhelmingly by the evidence of the people.

For many years prior to 1937, defendant, a certified public accountant, had audited the accounts of the various county officials of Prowers county under a contract with the county commissioners. During these years, as a matter of convenience, defendant had had a number of his personal checks cashed at the county treasurer's office. In so far as appears, all these checks were presented to and paid by the bank upon which they were drawn in ordinary business routine. Defendant introduced in evidence fourteen cancelled checks of this type, in the aggregate amount of $565.00 which had thus been cashed in the six-year period preceding 1937. In the fall of that year in the course of a regular audit of the county treasurer's accounts, defendant discovered a shortage then conceived to be about $6,000 but later by other auditors established as amounting to some $47,000. Defendant verbally reported the shortage to the county treasurer but made no mention of his discovery to the county commissioners, and later, with the knowledge that the shortage still existed and contrary to the purpose of an audit, made a formal report to the county officials expressing that the accounts of the treasurer were in order and balance. At the conclusion of the conversation in which defendant advised the treasurer of the detection of the shortage, or very soon thereafter, defendant asked the treasurer to cash Exhibit A, with which request the latter complied, taking public money from the cash drawer of his office in defendant's presence for that purpose. Thereafter and within the four months immediately following the discovery of the shortage, defendant obtained in the neighborhood of $2,000 of the monies of Prowers county. In the so-called cash of the treasurer's office appeared written devices, generally similar to the one which is the basis of the charge here, in face amount equal to the actual money obtained by defendant. Until sometime in 1939, when the treasurer's transgressions were finally bared, these devices were counted as cash items by the employees of

the treasurer's office. Except for one for $25.00, upon which payment was refused by the bank for shortage of funds, not one of the items was ever placed in regular commercial channels for collection or payment. It is undisputed that during the time defendant issued these devices and thereafter, he never had in his account in the First National Bank of Fort Morgan, sufficient funds to pay all the checks, or even one-half thereof, at any one time. The money obtained by defendant never has been repaid to Prowers county.

The sudden departure, coincident with the discovery of the shortage, from the long history of bona fide transactions to the devious course shown by the evidence, convinces me that the devices and instruments by which the county's money was obtained, were "wilfully untrue written orders," both spurious and sham, and that defendant intended them to be so when they were cashed for him. In this status Exhibit A was, therefore, a false and bogus check within the definition of *Williams v. Territory, supra,* and so within the scope of the statute.

In a conclusive sort of way, the majority opinion expresses, "A careful study of the report impels us to say that Exhibit A was not a false or bogus instrument within the purview of section 222, supra." So far as I can perceive, the opinion advances no reason for this pronouncement, and I think no valid one can be given. If it is the theory of the majority, as some expressions in the opinion seem to indicate, that Exhibit A was not a negotiable instrument and hence not a check within the language of section 222, supra, because blanks provided therein for the date and name of the payee were unfilled by defendant, the misconception is made apparent by the law of negotiable instruments as proclaimed by the uniform act as well as by the authorities. Thereunder it is well settled that the omission to insert in an instrument the name of the payee is not a feature or defect which affects negotiability. 7 Am. Jur., p. 838, §94. "If an instrument is delivered with a blank space

for the insertion of the date, the presumption is that authority is conferred on the payee to fill the blank." 7 Am. Jur., p. 827, §§71, 72. The circumstance that defendant had an account in the bank on which the checks were drawn, does not prevent their being bogus and false. The existence of the account, while competent for consideration with respect to defendant's intent at the time he issued the checks, in itself does not preclude his conviction. 22 Am. Jur., p. 475, §58. Should it be the view of the majority—concerning which I am not sure—that because the treasurer who cashed the items in question, was not deceived as to defendant's fraudulent purpose, the latter was immune from prosecution under section 222, supra, the position is untenable. It is well established that as to public bodies and governmental agencies, the crime of false pretenses may be committed, even though the official who parted with the public money knowingly participated in the fraud or might readily have discovered that such was being attempted. 22 Am. Jur., p. 450, §10. The logic and soundness of this rule are obvious, and its analogy in a confidence-game case is demonstrated by mentioning that the latter offense is considered as being so closely related to the crime of false pretense that the editors of both American Jurisprudence and Corpus Juris have found it advantageous to include both under the false-pretense title. See Am. Jur., p. 481, §73; 15 C.J.S., p. 821.

Expressing the conclusion of the majority of the court that Exhibit A was neither bogus nor false, the writer of the opinion states: "Exhibit A was exactly what defendant represented it to Clark to be, and the latter accepted it as a check in the nature of an I.O.U., to be held until defendant told him to 'run it thru'." For the reason I have last given, viz., that neither the participation in, nor knowledge of, defendant's fraud by the treasurer, could purge the original acts of the former, it is my belief that the statement quoted from the majority opinion is beside the point. In any event I am

unable to find anything in the record to indicate that at the time the treasurer cashed Exhibit A, defendant made any representations whatsoever. Further, although this may be subject to question because of seemingly inconsistency of statement in the testimony of the treasurer, I think it properly may be inferred that defendant's statement that he would let the treasurer know when the checks should be "run thru," rather than being made at the time of cashing Exhibit A, was expressed long afterward and when the treasurer was trying privately and unsuccessfully to have defendant take up his checks. I am unable to understand also, how statements by defendant, imputing fraility to the thing he presented as a check, even if made as the opinion recites, can logically afford a basis for declaring it not bogus or false.

For the reasons given I am convinced that the judgment of conviction should be affirmed.

MR. JUSTICE BURKE and MR. JUSTICE JACKSON join in this dissent.