No. 21370.

FRED ROGERS, A/K/A FRED C. ROGERS v. THE PEOPLE OF THE STATE OF COLORADO.
(422 P.2d 377)

Decided December 27, 1966.    Rehearing denied January 23, 1967.

Dickerson, Morrissey & Dwyer, Albert B. Wolf, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, John E. Bush, Assistant, George H. Sibley, Special Assistant, for defendant in error.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

By separate Grand Jury indictments, plaintiff in error, to whom we will refer by name was charged in the Arapahoe County district court with the crimes of confidence game larceny, false pretenses, larceny by bailee, perjury, and embezzlement. All of the separate indictments were consolidated for trial, and at the close of the People's case the court entered directed verdicts of acquittal on two of the indictments: the embezzlement charge on confession by the district attorney, and the charge of larceny by bailee on motion of Rogers. Motions for directed verdicts of acquittal on the other four indictments were denied.

Relying on grounds asserted in his motion that the evidence offered by the People was insufficient to support or prove the charges, Rogers did not offer any testimony. The jury returned verdicts of not guilty on the confidence game and larceny indictments, but found

the defendant guilty of "obtaining money under false pretenses" and guilty of perjury.

Rogers, in his summary of argument, has advanced a number of points on which he relies in seeking reversal of the judgment of conviction. However, the insufficiency of the evidence to sustain Roger's conviction on all indictments should have prompted the trial court to grant his motions for directed verdicts. The jury acquitted defendant of two of the charges; his conviction on the other two, we hold, should be reversed. There is no necessity, therefore, to comment on all of the assignments of error.

It is settled law in this state that in order to sustain a conviction of false pretenses, as that crime is set out in C.R.S. 1963, 40-14-2, there must be a misrepresentation of a past or existing fact. *People v. Orris,* 52 Colo. 244, 121 Pac. 163. The law was reiterated in *Chilton v. People,* 95 Colo. 268, 35 P.2d 870, in which this court reversed a conviction of obtaining money under false pretenses, stating:

"Statements of opinion, or estimates, or *promises,* are not actionable, and provide no basis for prosecution under the false pretenses statute." (Emphasis supplied.)

The Grand Jury charged Rogers with making certain representations to Lex Penix, knowing them to be false, and inducing Penix to make a deposit of funds in the Industrial Finance Company. The indictment goes on to charge that the representations by Rogers were made with the design and purpose to cheat and defraud Penix and that as a result the latter parted with property in excess of $50 in value.

The evidence as to the false representations was offered by the complaining witness Penix. Part of his testimony can be summarized as follows: "I was making inquiry of him [Rogers] about making a deposit larger than I had at any time previously. I made inquiry if he took sizable amounts — they were sizable to me — * * *

$10,000 or more." Then the following question and answer appears in the record:

"Q. All right, Now, will you relate the conversation that took place on that date?

"A. As I have stated, this was a larger amount than I had deposited with him at any time and we talked further, as I said, about him taking this larger amount. I asked about how long a notice that he would need for me to remove any or all of this. His reply was that he had legally I believe 30 days in which to — before I could make a withdrawal but he would not require that of me, I could make it if I would just give him ten or even less days' notice. I made inquiry at this time too whether in making this large amount how safe was I. He explained to me that he did not have any federal insurance but he had never lost a dollar for any of his depositors, and he says, 'You know me well enough to know that I wouldn't take this if you had any probability of not recouping it.'"

When asked whether Penix recalled any other conversations that he had with Mr. Rogers that he had not described to the jury, he replied, "Not at that time, sir." Other testimony by Penix relied upon by the People is the following series of questions and answers:

"Q. In June, 1960, did you place any reliance in Mr. Rogers' solvency at that time?

\* \* \*

"A. I did not question his solvency at any time.

"Q. And why not, sir?

\* \* \*

"A. Due to my acquaintance and faith in his integrity to take care of his business, and in turn my business. I had faith in his confidence. I considered him a friend that would not misplace my funds.

"Q. You had confidence in Fred Rogers?

"A. I certainly did.

"Q. Did you, Doctor, rely on the fact that the moneys

you deposited with Mr. Rogers could be withdrawn promptly?

"A. He had so stated to me that they could be in a very short time.

"Q. Did you rely?

"A. And he would not require the 30 days that he had legally.

\* \* \*

"Q. Did you rely, sir, on Mr. Rogers' statement to you that the money was safe?

"A. Surely.

"Q. Did you rely, sir, on Mr. Rogers' and the Industrial Finance Company's ability to return the money upon demand?

\* \* \*

"A Well, I certainly relied, as I have stated, on his integrity and his friendship.

"Q. Did you rely, sir, on the statement made to you by Mr. Rogers that in the past no depositor had ever lost any money?

"A. That would certainly be one of my means of reliance."

Viewing the evidence in the light of the law enunciated previously, the only representation of a past or existing fact was the statement that "he had never lost a dollar for any of his depositors." This was never shown to be false; there was no evidence that anyone had lost any money prior to the date of this particular transaction with Penix. All the other statements by Rogers were to the effect that Penix could withdraw his funds in less than the customary 30 days; that he probably could withdraw them in 10 days or less; and that he would have no difficulty getting his money — statements of opinion as to probabilities in the future if withdrawals were to be made.

██ It appears to be the theory of the People that Rogers failed to make disclosure of the Industrial Finance Company's condition which Rogers either knew

or should have known at the time of his accepting the Penix deposit. Although failure to make a disclosure and intentionally remaining silent as to a material fact may form the basis of a civil action in fraud or deceit, such evidence cannot support a conviction of obtaining money by false pretenses. Such was the holding in *Stumpff v. People*, 51 Colo. 202, 117 Pac. 134. In that case the defendant Stumpff induced the prosecuting witness to part with his money in exchange for a cow without disclosing the existence of a chattel mortgage against the animal. This court in that case said:

"The Attorney General does not claim that any false verbal statement was made by defendant at the time of the sale, but seeks to bring the case as made within the false pretense statute, upon the theory that the silence of defendant with reference to the chattel mortgage is of itself a false pretense and misrepresentation. *The general rule is that the mere non-disclosure of facts known to defendant, even though a disclosure thereof would operate to deter the prosecuting witness from parting with his money, is not a false pretense.* 19 Cyc. p. 403. And this is true, even though a false pretense may be proved by the acts or conduct of the defendant as well as by his words. In *People v. Baker*, 96 New York 340, EARL, Justice, in delivering the opinion of the court, expressly held that mere silence and mere suppression of the truth, upon which another may act, is not sufficient to constitute the crime of false pretenses. * * *" (Emphasis supplied.)

██ There is not one scintilla of evidence that Rogers made any statement to Penix concerning the financial condition of the company. The only evidence on this score is that Penix testified: "I did not question its solvency at any time." And when asked "why," he stated that the inducement to make the deposit was "my acquaintance and faith in his integrity to take care of his business and, in turn, my business. * * * I considered him a friend that would not misplace my funds." All of

this was what was in the mind of Penix, and, of course, cannot form the basis of a criminal charge.

Turning our attention to the conviction of the crime of perjury, this charge grew out of evidence that Rogers had made out and filed with the bank commissioner a financial statement which did not truly reflect the condition of the company. There was introduced in evidence as an exhibit the statements upon which there appeared the signature of Rogers, with the familiar jurat "subscribed and sworn to before me, etc." plus the signature and seal of a notary public, one Mrs. Jennings.

The statute on the crime of perjury under which defendant was convicted is C.R.S. 1963, 40-7-2. It reads as follows:

"Any person who shall sign any false written statement and willfully and corruptly *make oath to* or affirm the same before any officer having the right to administer oaths, shall be guilty of perjury and shall be punished accordingly." (Emphasis supplied.)

Another pertinent statute, C.R.S. 1963, 98-1-1, reads as follows:

"Whenever any person shall be required to take an oath before he enters upon the discharge of any office, position or business, or on any other lawful occasion, it shall be lawful for any person employed to administer the oath to administer it in the following form: The person *swearing,* with his *hand uplifted,* shall swear 'by the everliving God.'" (Emphasis supplied.)

■ An analysis of the foregoing statutes when read together indicates three necessary elements to complete the crime of perjury as charged here: (a) the signing of a false statement; (b) willfully and corruptly taking the oath or affirming the same; (c) making oath before an authorized officer in the manner prescribed for the giving of an oath.

The only proof offered by the People in support of this indictment was the testimony of the notary, Mrs. Jennings. From her was elicited: (1) that she was

acquainted with and knew the signature of Mr. Rogers, and that the signature on the statement was his; and (2) that her signature and seal also appeared thereon. Mrs. Jennings further testified that she had no independent recollection of the signing of the statements of financial condition.

■ The record reflects that no attempt was made to provide direct evidence that Rogers made an oath in connection with the signing of the statement. There is no proof that he raised his hand and called upon "the everliving God" or did any similar overt act which would constitute "making an oath" in addition to signing the statement. There is also no evidence that he actually appeared before the notary. Mrs. Jennings was a bookkeeper in the office, and from aught that appears from the record the statements may have been notarized routinely as are many acknowledgments in offices wherein the notary is familiar with signatures and merely attests thereto.

Admitting that there was no proof of the oath taking, the People rely on the proposition that when the jurat of the notary is introduced and the signature verified, a presumption arises that, in fact, an oath was taken; and in support thereof they cite authorities dealing not with oath taking but with *acknowledgments* of legal documents by a notary public. *Colpitts v. Fastenau*, 117 Colo. 594, 192 P.2d 524; *Holladay v. Dailey*, 1 Colo. 460. We believe that these cases are not in point; they do not involve proof of the crime of perjury.

Accepting the argument that in some cases a criminal conviction may be had upon a bare presumption, the presumption so allowed must fall where there is some evidence to counter the notion that the oath was actually taken. The courts then require independent proof of the actual oath taking.

■ A particularly interesting case is *Stewart v. State*, 142 So. 590 (Ala.), in which no presumption was held to apply where the notary's testimony was "equivocal"

on the issue of whether the oath was taken. 66 C.J.S. *Notaries*, §8, p. 620, states:

"In a prosecution for perjury by making a false affidavit, where the notary had no recollection of the transaction, it was held that the jurat alone was insufficient to prove the false swearing by defendant, and further proof was required." Citing Case v. People, 76 N.Y. (31 Sickels) 242.

In *O'Reilly v. People,* 86 N.Y. (41 Sickels) 154, the court said:

"To make a valid oath, for the falsity of which perjury will lie, there must be in some form, in the presence of an officer authorized to administer it, an unequivocal and present act, by which the affiant consciously takes upon himself the obligation of an oath."

Presumptions are indulged in aid of the endeavor to render justice fairly and impartially. When the reason or purpose for the operation of the presumption ceases, it cannot be availed of. 22A C.J.S. Criminal Law 328.

In this case, where proof beyond reasonable doubt is essential for conviction, the presumption is not being used to render justice fairly or impartially. Here we have an attempt to use it to supply testimony which the administering officer could not give. There was not even an attempt to elicit from the witness whether it was her custom in every case to administer the oath as required, or whether she did so in most cases, or at all. In fact, from the evidence the opposite inference could be drawn. Whatever inferential foundation the presumption might have in other cases, as when a stranger appears before a notary for the express purpose of giving an affidavit, the presumption is certainly weakened under circumstances indicating that the procedure for oath taking outlined by the statute probably was not followed in the office relationship between the notary and Rogers. As has been stated, Mrs. Jennings was a bookkeeper, helped prepare some of the very material that was in the statement, or supervised others in the

preparation thereof. Under most office arrangements where handling of papers are routine and perfunctory, it is unlikely that "the everliving God" was invoked to witness the truth of the statement. If he was, it is conceivable that the notary would remember the hand upraised and the solemn words. Accordingly, we hold the proof insufficient.

The judgments of conviction are reversed and the cause remanded to the trial court with instructions to discharge Rogers.

Mr. Justice McWilliams, Mr. Justice Frantz and Mr. Justice Schauer, while concurring in the reversal of the conviction on the indictment charging false pretense, dissent to that portion of the opinion reversing the perjury conviction.

Mr. Justice Frantz dissenting:

I find my self unable to assent to that portion of the majority opinion reversing the conviction of perjury. I attach a greater evidentiary value to a jurat regular in form and content than does the majority; to me, it is and remains prima facie evidence of verity until a jury is satisfied that it is not entitled to such credit.

Does a notary's lack of recollection of the circumstances of the execution of a jurat strip it of the quality and quantity necessary to make it prima facie evidence that the signatory took an oath? This question pinpoints the problem with which the court here had to deal. The majority said it does; I would hold to the contrary.

In simplest terms. I would regard a jurat, conventional in all respects, sufficient proof in itself that the person whose name is signed took the necessary oath. I believe that sound precedent supports this view.

Perhaps the earliest decision on the question was that of *King v. Morris*, 1 Leach 51, 168 Eng.Rep. 128. The defendant was accused of the crime of perjury, and in

the course of the opinion the court stated that "a jurat attested by the proper person before whom the oath ought to be taken, is sufficient proof of its being actually sworn by the person whose name is signed . . ."

The defendant was indicted for perjury in *Commonwealth v. Warden*, 11 Metc. (Mass.) 406. He had filed an answer in a case. The answer was supported by an oath. The officer who had administered the oath was not available as a witness at the trial for perjury, having died. It was the holding of the court that "the certificate of the magistrate before whom the oath was taken, his signature thereto being proved, was competent and sufficient prima facie evidence of the oath of the defendant."

In connection with testimony in a perjury case that the witness had no recollection of administering the oath, could not recall the particular occurrence or in what manner he may have administered the oath, but did rely on his custom of administering oaths, the court declared, in *State v. Day*, 108 Minn. 121, 121 N.W. 611, that "the application was signed by appellant. The jurat was properly filled out and signed by the clerk, and was prima facie evidence that it was properly sworn to by appellant." Notwithstanding his denials of being sworn, his conviction was upheld.

Under circumstances somewhat similar to those of the last cited case, the court used the following persuasive language in the case of *Komp v. State*, 129 Wis. 20, 108 N.W. 46:

"The official certificate, with proof of authenticity of the signatures of the affiant and the officer, was sufficient prima facie proof of the proper execution of the affidavit. . . . Mere want of present recollection as to the exact circumstances under which the oath was taken will not necessarily control the presumption of fact arising from the official certificate."

See *State v. Madigan*, 57 Minn. 425, 59 N.W. 490.

In a forgery prosecution the Supreme Court of Arizona

(*Lewis v. People*, 32 Ariz. 182, 256 Pac. 1048) states the rule thus:

". . . The certificate of the notary was presumptive, and, so long as it stood unimpeached, conclusive, evidence they had so sworn."

The authorities upon which the majority rely do not, in my view, afford aid and comfort to them. They cite 66 C.J.S., Notaries, pg. 620, which in turn cites *Case v. People*, 76 N.Y. (31 Sickles) 242, as standing for the proposition that the jurat alone, unaided by other proof, is insufficient to establish the taking of an oath. I interpret *Case v. People* differently. The case stands for the proposition that the prima facie effect of a jurat is rebutted by a showing that in fact the affidavit was not sworn to.

The officer who purportedly took the affidavit testified in such manner that grave doubt was thrown on the matter of administering the oath. The accused postively stated that he had not taken the oath, as did others. Concerning the certificate the Court of Appeals of New York stated:

"The certificate which the notary had given, on its face, in connection with the testimony, raised a presumption, perhaps, that the officer had done his duty, and *prima facie* was barely enough to authorize such a conclusion. In view, however, of the fact that the officer himself, with the affidavit signed by him before him, refused to swear that he did administer the oath, this presumption was not very strong. While a presumption, arising from a given state of facts, may properly be indulged in favor of the performance by a public officer of an official duty, such presumption utterly fails, when the evidence shows that it is entirely unwarranted. In a case like this, there must be proof of the oath taken, independent of the notary's certificate, signature, seal and jurat. Assuming that the evidence was *prima facie* sufficient, the presumption arising from the testimony was liable to be rebutted by other testimony that the

oath was not administered; and we think the proof on behalf of the prisoner was entirely sufficient to overcome the evidence of the prosecution, and to establish that no oath ever was administered, and that the affidavit was not sworn to."

*O'Reiley v. People*, 86 N.Y. 154, another case cited by the majority, is authority for the proposition that merely subscribing to an affidavit is not swearing to it. *Stewart v. State*, 25 Ala.App 155, 142 So. 590, is quite similar to the case of *Case v People, supra*

I would affirm the conviction for perjury

Mr. Justice McWilliams and Mr. Justice Schauer authorize me to say that they join in this dissent.