SKULHUS, Plaintiff in error, vs. THE STATE, Defendant in error.

*December 12, 1914—January 12, 1915.*

*Criminal law: Assault with intent to commit rape.*

1. A person is not guilty of an assault with intent to commit rape unless, at the time he made the assault or at some time during its continuance, he purposed violating the woman forcibly and against her will. If he so purposed, it matters not that fear of detection and the consequences of his act, or the manner and degree of resistance, caused him to desist.

2. A purpose to overcome resistance is essential to the offense, but if the woman does not at any time consent it is not essential that she resist unto death, or continue her physical resistance in face of reasonably supposed imminent peril of great bodily harm, or controlling terror.

3. Although in this case the accused desisted from the assault as soon as outcry was made, a verdict finding him guilty of an assault with intent to commit rape was warranted by the evidence.

ERROR to review a judgment of the circuit court for Eau Claire county: E. RAY STEVENS, Judge. *Affirmed.*

Plaintiff was, in due form, convicted of the crime of assault with intent to commit the crime of rape. The alleged event occurred at Eau Claire, Wisconsin, in the daytime of August 13, 1913, and in the dining room of the woman's home. He was thirty-five years of age, a man of family, and a resident business man of Eleva, Wisconsin. She was a married woman twenty-two years of age, rather large and strong. The night before he lodged with a friend at a well known hotel in the city. In the morning he paid his bill and started out to make calls, ostensibly, for the purpose of soliciting enlistments in what he called his "Household Insurance Club." Somewhere around 10 o'clock in the forenoon he brought up at the house of a neighbor of the assaulted party, which he entered without leave, and commenced plying his ostensible trade. The lady of the house was alone. He represented himself as Dr. Nicolaysen and said he was connected with a

firm of prominent doctors of the city. Without inducing the
lady to join his club or being permitted to proceed far into
the house or discuss his pretended business, he departed and
soon called at the near-by house in question. He entered the
house, without leave, and found the lady thereof apparently
alone. He made known his pretended business, as before,
and repeated his misrepresentations, adding that some 300
Eau Claire ladies were going into his scheme, that the neigh-
bor first called upon had joined, and he had given her a thor-
ough examination. In the meantime he satisfied himself by
inquiries that the woman was, in fact, alone. The house was
on a much traveled street, was near thereto, was with open
doors, and but a few feet from the house he first entered.
He suggested taking the woman's measurement, and such
suggestion not being met with favor, followed it by declaring
he would do so. Upon that he advanced towards her with a
cord in his hands, grabbed her, attempted to take suggestive
liberties with her person, commanded her to come into the
bedroom, and forced her nine feet in that direction. They
struggled some three minutes, resulting in his getting inside
the bedroom and trying to pull her in. Thereupon, despair-
ing of breaking his hold by pulling, or otherwise making
him desist, she struck him and screamed. He did not desist
immediately upon being struck but did and ran away when
she screamed. In a few moments she went to the neighbor's
house aforesaid and made complaint of the attempted viola-
tion of her person. The accused was an entire stranger to
the woman and to people generally in the neighborhood.
During the contest aforesaid neither the woman's hair nor
her clothing was disarranged in any way nor, while the as-
sault was in progress, did evidence of anything unusual oc-
curring attract attention of neighbors or passers by, except
the woman next door heard one shriek. Soon thereafter the
assaulted called and appeared to be normal in every respect,
except she was much agitated and crying. She said the ac-

cused wanted to go into the bedroom with her and she struck him, and then he took his hat and went away and that was the last she saw of him.

After the accused was arrested he freely and correctly stated his residence, age, and business. He said he was ac-customed to visit Eau Claire once in a while, and that he had no remembrance of having assaulted the woman. He denied the charge. The cause was submitted to the jury resulting in a verdict of guilty as charged, and judgment was rendered thereon.

For the plaintiff in error there was a brief by *Larson & Gilbertson* and *S. G. Gilman,* and oral argument by *J. C. Gilbertson.*

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, attorneys, and *Fred Arnold,* district attorney of Eau Claire county, of counsel, and oral argument by *Mr. Messerschmidt.*

MARSHALL, J. The jury and the trial judge saw the participants in the event which resulted in the accused being put upon his trial for the serious offense of which he was convicted. Seeing the person assaulted and hearing her testify, and observing the accused during the trial, though he did not testify, might properly have had a very efficient influence in producing the decision complained of. Presumptions in that regard are to be considered in support thereof, in addition to all reasonable inferences from the evidence, found in the record.

True, notwithstanding the conduct of the accused was highly reprehensible from any point of view, and he deserved severe punishment therefor, he did not commit the crime for which he was convicted, unless at the time he made the assault, or at some time during its continuance, he purposed, violating the woman, as charged, forcibly and against her will. If he did, it matters not, that fear of detection and the

consequences of his act, or the manner and degree of resist-
ance, caused him to desist.    While in a case of this sort the
conduct of the assaulted party as regards self-defense is very
strict in favor of the idea that some offense, if any, less than
the highest was attempted or perpetrated, it must not be lost
sight of that it is consent by the assaulted party, however
reluctantly given, and a purpose to secure consent, regardless
of the means used to accomplish it, which robs the act of the
vital element of the highest offense which can be committed
upon womanhood,—not submission or purpose to secure sub-
mission.    There may be, under some circumstances, the lat-
ter or a purpose of securing it, and utter absence of consent
on the one side and determination to conquer the will as well
as the body on the other, characterize the event.

The evidence in this case must be viewed in the light of
the foregoing.    Conditioned that there be no consent, a wo-
man is not compelled, in her self-defense, to resist unto death,
or continue to physically resist in face of reasonably supposed
imminent peril of great bodily harm, or controlling terror,—
to avoid being socially convicted, and open to be efficiently
charged before the law, of being guilty of the highly immoral
offense requiring only consent, though reluctantly given.

The maxim, "There is reason in all things" applies in this
field as well as in any other, and enters into the rule stated
with misleading omission of any explanation that resistance
to the uttermost, both mental and physical, and executed pur-
pose to overcome such resistance, is essential to the offense
of rape, and assault with such purpose is essential to the neces-
sary precedent offense.

Regardless of the moral aspects of the matter, there is no
middle ground in the law between the highest offense upon
woman, including the essential precedent offense, and that
where both parties are to be treated as participants in violat-
ing the law and candidates for punishment by the law, and
by social condemnation where the penalties to woman are

quite as severe as those prescribed by statute. Therefore, while the duty of self-defense and the essentials of its efficient performance are very great, as has been stated, the dividing line being between consent and submission with criminal participation on one side and entire absence of it and abhorrence of the act by one party, on the other, the real fact of the matter is often one of extreme difficulty to determine, especially in a case where, as here, it is not claimed that the intended offense proceeded beyond a preliminary assault. The ultimate must be read out of inferences arising circumstantially. To do that is peculiarly a jury function. It would take an extreme case to impeach the result reached, especially when approved by the trial judge.

Where a jury faces a situation characterized by 'a hostile assault having been unquestionably committed, as in this case, and, especially, by an utter stranger of intelligence and middle age, upon a young married woman, alone and in the ordinary performance of her domestic duties, they cannot be expected to draw any very fine line in respect to whether the assaulter purposed forcibly conquering and securing submission or only of obtaining consent. To reason that, where a person circumstanced as the accused was, goes as far as he did, the probabilities are all in favor of the view that he intended full accomplishment, regardless of opposition, notwithstanding he was aroused to a full sense of his danger by an outcry liable to bring assistance to his victim, is logical and certainly permissible.

The conduct of the accused may well be viewed as conclusively negativing any purpose other than to have carnal knowledge of the body of the woman regardless of opposition from her. That he desisted as soon as an outcry was made, is evidentiary to the contrary, but not, necessarily, of sufficient weight to create a reasonable doubt as to what his real purpose was and that he was so recalled to the peril of his situation. It may be conceded that, for the time being, the

accused was so mentally perverted and so controlled by his mere animal nature that he was deaf to the consequences of his act, unless he was actually insane, of which there is no proof; but that affords him no excuse.

We have thus written at considerable length because of the earnestness with which counsel contended that the circumstances characterizing the occurrence in question leave, so clearly, a reasonable doubt as to the purpose of the accused, that the jury 'was not warranted in finding him guilty of more than the offense of assault. We have purposed in deciding the case, to make such full response to such contention as to indicate that it has been carefully considered in all its aspects.

While the foregoing has been primarily addressed to the contention that there is no sound basis in the evidence for the verdict, it covers, sufficiently, all points suggested in respect to instructions and refusals to instruct.

*By the Court.*—The judgment is affirmed.