STATE, Respondent, vs. DRISCOLL and another, Appellants.

*January 9—February 3, 1953.*

232

For the appellants there was a brief by *Hall & Griffith* of Madison, and oral argument by *Laurence W. Hall*.

For the respondent there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz*.

Currie, J.   The defendants contend that the evidence did not establish a violation of sec. 351.20, Stats., for the reason that such statute has application only to that class of persons who stand in *loco parentis* to the minor to whose delinquency they have contributed.  Sec. 351.20 (1) provides:

"In all cases where any child shall be a dependent, neglected, or delinquent child, as defined by the statutes of this state, *the parent or parents, legal guardian, or person having the custody of such child, or any other person,* responsible for such child being dependent, neglected, or delinquent, through wilful neglect or by any wilful act encouraging, causing, or contributing to the dependency, neglect, or delinquency of such child, whether said child has or has not previously been dependent, neglected, or delinquent, shall be guilty of a misdemeanor, . . ."  (Emphasis supplied.)

Under the construction urged by the defendants the words *"or any other person"* appearing in the statute would be ignored and treated as surplusage.  Such a result would be contrary to one of the well-recognized rules of statutory construction.  In *State v. Resler* (1952), 262 Wis. 285, 55 N. W. (2d) 35, this court stated (p. 293) :

"To accept the construction that the state would have us use would be to give the first sentence of the section no meaning at all, which is to treat it as surplusage.  This we cannot do."

Furthermore, in *Riger v. State* (1946), 249 Wis. 201, 23 N. W. (2d) 456, this court upheld a conviction of a defend-

ant under this same statute for contributing to the delinquency of a seventeen-year-old girl as to whom the defendant was not the parent or guardian, and did not stand in *loco parentis* to her.

The defendants also contend that the evidence was insufficient, as a matter of law, to sustain a conviction. Both the jury and the trial court, who saw and heard the witnesses testify, accepted Donna's testimony as true in preference to that of numerous witnesses called by the defense to contradict her. If there is any credible evidence which in any reasonable view supports a verdict in a criminal case, it cannot be disturbed on appeal. *State v. Whitney* (1945), 247 Wis. 112, 120, 18 N. W. (2d) 705, and *State v. Hintz* (1930), 200 Wis. 636, 640, 229 N. W. 54. In *O'Keefe v. State* (1922), 177 Wis. 64, 187 N. W. 656, the defendant was convicted of taking indecent liberties with a female under the age of sixteen, and on appeal it was strenuously argued in his behalf that the testimony on the part of the state, consisting only of the testimony of the complaining witness, was insufficient to sustain the judgment; but this court declared (p. 67) :

"It was a question of veracity between the complaining witness and the defendant, and the jury had a right to believe the state's witness. Convictions of more serious offenses have been sustained upon practically the unsupported testimony of one witness. *McLain v. State,* 159 Wis. 204, 206, 149 N. W. 771; *Skulhus v. State,* 159 Wis. 475, 150 N. W. 503. The contention cannot be sustained."

The chief argument in defendants' brief is directed to the proposition that defendants are entitled to a new trial in the interests of justice, and this contention is based upon the following three grounds:

(1) That defendants were denied their right to prove an alibi.

(2) It is claimed that the trial judge asked certain leading and prejudicial questions.

(3) That new evidence was obtained subsequent to trial which it is maintained would tend to impeach Donna or establish her lack of mental capacity to testify.

The attorney who represented defendants in the trial below is not of counsel on this appeal. At the trial defendants' attorney attempted to ask questions of the defendant Driscoll which would tend to prove that Driscoll was at a place other than with Donna on the night in question. The district attorney objected to such question and was sustained by the trial court on the ground that no statutory notice of intent to prove an alibi had been given. The attorney for the defense then stated: "I don't think it is an alibi if a person claims to be away from here." It is now claimed that such latter statement establishes that defendants' attorney at the trial "failed in his legal duty to his clients by mistake or otherwise, and deprived them of their lawful defense." This same argument was advanced before the trial court on the motions for a new trial and the learned trial judge, in commenting thereon, stated that he had known the defense attorney for fifty years, had been with him in many lawsuits, both on the same side and on the other side, and had heard many cases tried by him as attorney since the judge had been on the bench. The trial judge also stated:

"He has a reputation as a very careful attorney. He has participated in not dozens of cases but hundreds of cases and was United States district attorney for four years. Who are we to say that he didn't defend these men as he thought was best."

In view of these facts stated by the trial judge regarding the competency of defendants' counsel, who represented them at the trial, we cannot assume that his failure to give notice of intention to prove an alibi was due to ignorance or mistake.

Furthermore, we do not believe the defendants were prejudiced by failure to give notice of intent to prove an alibi.

Donna testified that Richard Campton was at all times with her and the two defendants on the evening in question up until the time she went upstairs with the defendants in the Gaulthair home. Campton denied being with Donna on the night of April 30, 1951. One Grant Turnmire, a tavernkeeper, and his bartender testified that Campton was in the former's tavern from 8 or 9 o'clock of the night in question until closing time at 11 o'clock. Donna identified the car in which she accompanied defendants and Campton that night as being a "Henry J." The only Henry J. the defendants would have had access to was one which was owned together by Driscoll and Driscoll's father, and the father testified on the day in question he drove this Henry J. to Madison and did not return to La Farge with it until about 10:20 p. m. that evening. Thus the jury must have disbelieved Campton, the tavernkeeper, the bartender, and Driscoll's father, and it is unlikely that the jury would have given any more weight to the testimony of witnesses who might have placed the defendants elsewhere on the night in question.

The brief in behalf of defendants criticizes the trial judge for asking "leading and improper questions" which it is claimed were prejudicial to the defendants.

At the trial Donna testified that Driscoll had "pulled" her upstairs while at the Gaulthair home. In cross-examination defendants' attorney confronted her with testimony given at the preliminary examination in which she had stated that Gaulthair had pulled her upstairs. Then, quoting from the transcript at the trial, the following questions were propounded and answers given:

"*Q*. Well, it was either Jack or Mr. Driscoll then. Which was it? *A*. I believe it was Jack. I don't know.

"The Court: Let me ask you a question, whether or not they both assisted in dragging you up?

"The Witness: Yes, they did.

"The Court: Describe so that we will know.

"The Witness: One was pushing and one was pulling.

"The Court: You don't know which was which, is that the idea?

"The Witness: Yes."

After the conclusion of the direct examination, the cross-examination, and the redirect examination of Donna, the trial court stated that he would like to ask "one or two questions" and he asked Donna about what transpired upstairs in the Gaulthair home, and with reference to Gaulthair the trial court put this question to Donna and received this answer:

"*Q.* Did he attempt to kiss you? *A.* No."

Counsel for defendants maintain that by asking leading questions in the instances hereinbefore quoted the trial court committed prejudicial error. We fail to see how the defendants were prejudiced. With reference to the incident as to whether either or both of the defendants pulled Donna upstairs at the Gaulthair home, it would seem to be entirely immaterial, in so far as the alleged violation of sec. 351.20, Stats., is concerned, whether the defendants invited her upstairs and she accepted the invitation voluntarily, or whether defendants, or either of them, pulled her up. The question as to whether Gaulthair kissed Donna while they were seated on the bed upstairs brought forth a "No" answer which was favorable to the interests of the defendants.

We would hesitate to lay down a rule that a trial court commits error by merely asking a leading question. The principle applying to situations of this kind was declared in the opinion of this court by Mr. Justice WINSLOW in *Komp v. State* (1906), 129 Wis. 20, 24, 108 N. W. 46, as follows:

"The right of a trial judge, in the exercise of a sound discretion, to examine or cross-examine a witness cannot be doubted. It is a right that is sometimes most valuable in the

administration of justice, *but it should be most carefully exercised, and the questions put should not betray bias or prejudice, nor carry to the jury the impression that the judge has made up his mind as to the facts.* The questions should be framed to make clear that which is not clear. Within these limits there can be no just fault found with the fact that the trial judge asks some questions of a witness." (Emphasis supplied.)

For a collection of the authorities on the question of the propriety of conduct of the trial judge propounding questions to witnesses in a criminal case see annotation in 84 A. L. R. 1172. The general rule stated in such annotation is that "the trial judge in a criminal case should not by the form, manner, or extent of his questioning indicate to the jury his opinion as to the defendant's guilt, or as to the weight or sufficiency of the evidence, and that he should observe the principles governing the examination of witnesses generally."

We do not believe that the few leading questions asked by the trial court in this case indicated to the jury that the trial court had arrived at an opinion that the defendants were guilty of the offense charged.

In support of the motion for a new trial the defendants filed a sworn petition reciting that subsequent to the trial, Donna, in May, 1952, went to Beloit and took up residence in a rooming house there and informed the landlady that she was eighteen years of age and was planning to be married; that Donna was interviewed by a representative of defendants on May 13, 1952, at Beloit and told such representative that the juvenile charges against her in Vernon county were to be dropped, and were dropped if she co-operated in the criminal case against Driscoll; and that since the trial the defendants ascertained that the father of Donna at the time of the trial was committed to an asylum for the insane, and is insane, and that the next older sister of Donna was at the time of the trial committed to the Oregon school for girls. It is claimed that this newly discovered evidence tends to impeach

Donna and raises a serious question as to her mental competency. Whether a new trial in the interests of justice should be granted on this alleged newly discovered evidence presented a question peculiarly for the discretion of the trial court, and there was no abuse of discretion on the part of the trial court in denying such application for a new trial.

*By the Court.*—Judgments and orders affirmed.