COURT OF APPEALS
DECISION
DATED AND FILED

December 5, 2204

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP82**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019FA1039

**IN COURT OF APPEALS
DISTRICT IV**

IN RE THE MARRIAGE OF:

VERA AMONDI OKELLO,

    PETITIONER-RESPONDENT,

  V.

JESSE ROBERT SCHWORCK,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed.*

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Jesse Schworck, pro se, appeals a post-divorce order granting Vera Okello's motion to modify legal custody and awarding Okello impasse-breaking authority regarding school enrollment for the parties' minor child.[1]  Schworck argues that he was denied the right to a fair and impartial judge and that the circuit court erred in granting Okello's motion by considering inappropriate facts and because the record does not support either that there was a substantial change of circumstances or that the modification is in the best interest of the parties' child.  Separately, Okello moves for costs for a frivolous appeal. We reject Schworck's arguments, and, accordingly, we affirm.  We also deny Okello's motion for costs.

## BACKGROUND

¶2      Okello and Schworck were married in 2013 in Nairobi, Kenya. They have one child together, who was born in July 2016.  In June 2019, Okello filed for divorce in the Dane County circuit court.

¶3      In November 2019, while the divorce action was pending in the circuit court, Schworck filed a petition in a court in Kenya, seeking to have his marriage to Okello declared "void," based on an allegation that Okello procured the marriage by fraud because her "sole intention" in getting married "was to be able to travel and to relocate to the United States."  In June 2020, the court in Kenya issued an order declaring the marriage void.

---

[1] In his notice of appeal, Schworck also states that he appeals the circuit court's order denying his motion for reconsideration.  Schworck does not make any arguments about the order denying reconsideration, and, therefore, we affirm denial of the reconsideration motion without further discussing it.

2

¶4    In November 2020, following a contested hearing in the divorce action in the Dane County circuit court, the court entered a written judgment of divorce. The court acknowledged that Schworck had filed a petition for a judgment of void marriage in Kenya, upheld the validity of the marriage, and granted the judgment of divorce. In a separate written legal custody order, also issued in November 2020, the court awarded Okello and Schworck joint legal custody of their child. Schworck did not timely appeal either the judgment of divorce or the order addressing legal custody.

¶5    In August 2022, Okello filed a post-judgment motion seeking, as pertinent here, a modification of the legal custody order granting her impasse-breaking authority regarding school enrollment for the parties' child based on a substantial change of circumstances since the entry of the previous legal custody order.[2]  Specifically, in a supporting affidavit, Okello averred that she wished to enroll the child in school in DeForest, where she was living, rather than in a school in Madison, where the child was then enrolled. In the affidavit and the subsequent hearing on her motion, Okello averred and testified that the child was bullied in the Madison school, and that Schworck had been traveling more frequently to Kenya with as little as one week's notice, making it difficult for her to arrange to take the child to and from school. Okello also averred and testified that, when she attempted to discuss changing the child's school enrollment, Schworck would threaten to seek her arrest or deportation.

---

[2] Okello also sought a modification of the placement schedule, a finding that Schworck was in contempt, an order directing Schworck to purge his contempt, an award of costs associated with Schworck's contempt, and a contribution to Okello's fees incurred in bringing the motion. These additional issues were resolved prior to the November 2023 hearing and are not challenged on appeal.

¶6    In November 2023, the circuit court held the hearing on whether to grant Okello impasse-breaking authority regarding school enrollment for the child. Schworck appeared pro se, and Okello was represented by counsel. Okello testified as summarized above; Schworck cross-examined Okello and testified himself; the court questioned both parties during their testimony; and Schworck called his mother as a witness.

¶7    At the conclusion of the hearing, the circuit court issued an oral ruling granting Okello's motion. The court found Okello more credible than Schworck and made the following findings of fact: Schworck has a wife and child in Kenya; when Schworck travels to Kenya, he provides Okello with one or two weeks' notice; there is a lack of communication between the parties regarding their child's school enrollment, in large part due to Schworck's repeated threats regarding Okello's immigration status, which he makes when Okello attempts to discuss their child's education; Okello and Schworck cannot "make a collegial co-parenting decision" regarding their child's school enrollment; and there is "some degree of domination and control" by Schworck over Okello.

¶8    Expanding on the threats referenced above, the circuit court found that "every time Ms. Okello wants to talk about a decision involving [the child], [Schworck] bring[s] up the annulment, the marriage, the Kenya proceeding, her immigration status, a warrant for her arrest, her deportation." The court continued:

> And that corrupts the communication and throws Ms. Okello, understandably, in my words, [in] a paralysis of fear that one day she's going to wake up and immigration is going to be knocking at her door, she's going to be deported, never to see [the child] again. That is corrosive to the co-parenting relationship and it's never in [the child's] best interest.

4

¶9     Additionally, in its written findings and order issued after the hearing, the circuit court found that: "Schworck has historically left the country and traveled to Kenya for extended periods of time without providing more than a week's notice to [Okello]"; "[d]uring these times, … Okello is primarily responsible for the minor child's care, including transporting him to and from school"; "[t]he court does not find … Schworck's testimony that he does not have future plans to travel to Kenya credible"; "the communication between the parties is poor"; "[w]hen … Okello tries to discuss school-related custodial issues with … Schworck, he responds by bringing up her immigration status, her potential deportation, and his wishes to travel to Kenya with the minor child"; "[t]he court does not find the statements made by … Schworck that he no longer has any interest or ability to pursue legal action against … Okello that would threaten her immigration status to be credible"; "Okello's concerns about the school curriculum and issues of bullying are appropriate considerations on school choice"; and "Schworck has and is likely to continue to make threats against … Okello's immigration status and to make demands about [their child]'s travel to Kenya.    These ongoing threats unreasonably affect the parties' ability to effectively coparent."

¶10    This appeal follows.[3]

---

[3] Neither Schworck's pro se briefs, nor the brief filed by Okello's counsel, comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs.  *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover").  This rule has recently been amended, *see* S. CT. ORDER 20-07 (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for e-filing.  As our supreme court explained when it amended the rule, the new pagination requirements ensure that the numbers on each page of a brief "will match ... the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief.  S. CT. ORDER 20-07 cmt. at xl.  Both parties also, at times,

(continued)

## DISCUSSION

¶11      Schworck argues that he was denied his right to a fair and impartial judge in the circuit court and that the court erred in granting Okello's motion by considering inappropriate facts and because the record does not support either that there was a substantial change of circumstances or that the modification is in the best interest of the parties' child.[4]  We conclude that Schworck has failed to rebut the presumption of the circuit court's impartiality and that the court did not err in granting Okello's motion for impasse-breaking authority.  We also conclude that,

_____

refer to the parties by their status on appeal and not by their names, contrary to RULE 809.19(1)(i).

Additionally, we note that Schworck, who has experience with appellate litigation as a pro se litigant, has submitted briefs that do not comply with many of the other requirements set forth in WIS. STAT. RULE 809.19.  Schworck's brief-in-chief fails to include a "statement of the issues presented for review and how the trial court decided them," as required by RULE 809.19(1)(b), or a statement on oral argument and publication as required by RULE 809.19(1)(c); and his arguments are not "arranged in the order of the statement of issues," as required by RULE 809.19(1)(e), because there is no statement of issues.  Compliance with the rules of appellate procedure is required both out of fairness to opposing parties and for the efficient working of this court.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[4] Schworck also repeats his assertion that the judgment of divorce is void based on the judgment obtained in the Kenyan court.  That issue is not before us in this appeal.  WISCONSIN STAT. RULE 809.10(1)(b)2. requires an appellant to identify the order appealed from and the date it was entered in a notice of appeal.  Schworck's notice of appeal identifies only the order granting Okello impasse-breaking authority.  To the extent that Schworck intends in this appeal to challenge the judgment of divorce, such an appeal would be untimely because the divorce judgment was issued in November 2020 and Schworck filed the notice of appeal in this case on January 17, 2024.  See WIS. STAT. § 808.04(1) (requiring that, to be timely, a notice of appeal must be filed within either 45 or 90 days from the decision being appealed from).  Furthermore, Schworck fails to cite legal authority in support of his assertions on this issue.  See *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (stating that we need not consider arguments unsupported by legal authority).  For all of these reasons, we do not address the parties' arguments as to the validity of the divorce judgment.

despite Schworck losing on the merits, Okello is not entitled to costs for a frivolous appeal. We explain each conclusion in turn.

## I. Fair and Impartial Judge

¶12     Schworck argues that he was denied a fair and impartial judge. Specifically, Schworck argues that the circuit court "prejudged" the outcome of the motion and did not allow Schworck to make a record of his arguments as to why Okello's motion for impasse-breaking authority should be denied. Schworck also argues that the court abandoned its neutrality by advocating for Okello. We now lay out the relevant legal standards for evaluating an allegation of judicial bias, then present additional background from the hearing, and finally assess whether the record supports Schworck's arguments.

¶13     "'It is axiomatic that a fair trial in a fair tribunal is a basic requirement of due process.'" *State v. Herrmann*, 2015 WI 84, ¶25, 364 Wis. 2d 336, 867 N.W.2d 772 (internal quotation marks and alterations omitted) (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009)). Said differently, the "right to an impartial judge is fundamental to our notion of due process." *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385.

¶14     "Whether a circuit court's partiality can be questioned is a matter of law that we review independently." *Id.*, ¶7. "We presume a judge has acted fairly, impartially, and without bias; however, this presumption is rebuttable." *Id.*, ¶8. The burden is "on the party asserting the bias to show that bias by a preponderance of the evidence." *Herrmann*, 364 Wis. 2d 336, ¶24.

¶15     "When evaluating whether a [party] has rebutted the presumption in favor of the court's impartiality, we generally apply two tests, one subjective and

one objective." ***Goodson***, 320 Wis. 2d 166, ¶8. Schworck does not argue that the circuit court here was subjectively biased. Therefore, we need only assess whether the court was objectively biased.

> ¶16 As this court has explained:
>
>> Objective bias can exist in two situations. The first is where there is the appearance of bias. "[T]he appearance of bias offends constitutional due process principles whenever a reasonable person—taking into consideration human psychological tendencies and weaknesses— concludes that the average judge could not be trusted to 'hold the balance nice, clear and true' under all the circumstances." Thus, the appearance of partiality constitutes objective bias when a reasonable person could question the court's impartiality based on the court's statements. The second form of objective bias occurs where "there are objective facts demonstrating … the trial judge in fact treated [a party] unfairly."

***Id.***, ¶9 (citations and quoted sources omitted).

### A. "Prejudged" case and treated Schworck unfairly

¶17 Schworck argues that the circuit court "prejudged [Schworck]'s response in opposition to [Okello]'s motion" and prevented him from "making a record of why he believed … that the [circuit] court should dismiss [Okello]'s [m]otion." We understand Schworck to be arguing that there is both: (1) the appearance of prejudgment—*i.e.*, that a reasonable person would conclude that the circuit court "'could not be trusted to hold the balance nice, clear and true'" based on the court's statements at the hearing, *see **Goodson***, 320 Wis. 2d 166, ¶9; and (2) actual bias—*i.e.*, that the court "'in fact treated [Schworck] unfairly,'" *see **id.*** (quoted sources omitted).

¶18    The only citation to the record that Schworck makes in support of his argument is to one exchange between him and the circuit court.  We present this portion of the transcript, and summarize or quote excerpts from other relevant portions of the transcript, below.

*Additional Background*

¶19    At the beginning of the hearing on Okello's motion for impasse-breaking authority, the circuit court asked Okello's counsel "what relief Ms. Okello is seeking this morning."   Schworck interjected and the exchange proceeded as follows:

> SCHWORCK: Your Honor, may I object before she proceeds?
>
> THE COURT:  No.
>
> SCHWORCK:  Before I'm able to proceed?
>
> THE COURT:  No.
>
> SCHWORCK: I was still challenging whether she has a basis – statutory basis to even have a trial or a hearing on these matters since they're stale and all of the issues, like you've said in your opening statement and she conceded, have been resolved.
>
> THE COURT:  Okay.
>
> SCHWORCK:  So I don't see where –
>
> THE COURT: To the extent you're seeking to – I'm not sure what you're asking.  Whatever you're asking for this morning, it's denied.  I want to get to the merits and address a motion that's been pending for over a year.
>
> Let's hear, in terms of what the motion is that you want … [Okello's counsel], you're presently before the Court on your client's motion, what relief are you seeking?

The hearing then proceeded.

9

¶20 The circuit court provided Schworck with opportunities to testify and present argument freely throughout the hearing, asking questions that included, "What else would you like to tell me about?" and, "[D]o you have anything more you'd like to tell me?" Near the end of the hearing, the following exchange took place:

> THE COURT: Anything else?
>
> SCHWORCK: About this?
>
> THE COURT: Well, anything. See this is – I've learned over the last ten years, and this is why I asked you the question because invariably, if I don't ask the question, like, twice, I make a decision and then someone says, Judge, wait a minute, you didn't hear what I have to say or I've got something more to say. It's really important for people to say, okay, I've told you everything….
>
> SCHWORCK: All right.

¶21 At the hearing, Schworck testified, called his mother as a witness, and cross-examined Okello when she testified. The court then set out its thoughts on how it assessed the testimony, prefacing its remarks by telling Schworck, "I'll give you an opportunity to respond and then I'll make a decision." In the course of its remarks, the court asked two questions of Schworck. The first question referenced Schworck's frequent trips out of the country with little notice to Okello. The court asked whether it should require that Schworck give Okello "no less than six weeks' notice" before Schworck's trips out of the country. Schworck answered by proposing "four weeks notice," but with "an exact date … given closer to the last week."

¶22 The second question referenced Schworck allegedly continuing to threaten Okello when she broached the subject of their child's school enrollment.

The court asked whether Schworck, going forward, renounced any intent to seek Okello's arrest or deportation. Schworck did not answer this question.

¶23 The circuit court then made its ruling granting Okello's motion. The court noted that the case was not "black-and-white" and that, "even at the break time … I had no idea what I was going to do," and proceeded to set out its reasoning based on the evidence before it.

*Analysis*

¶24 We conclude that Schworck does not show by a preponderance of the evidence that there is either the appearance of prejudgment, *i.e.*, that a reasonable person would conclude that the circuit court "'could not be trusted to hold the balance nice, clear and true'" under the circumstances just described, or actual bias, *i.e.*, that the court "'in fact treated [Schworck] unfairly.'" *See Goodson*, 320 Wis. 2d 166, ¶9 (quoted sources omitted). Our decisions in *Gudgeon* and *Goodson* guide our conclusion.

¶25 In *Gudgeon*, as a condition of probation, Gudgeon was ordered to pay restitution to the owner of a motorcycle that Gudgeon crashed. *State v. Gudgeon*, 2006 WI App 143, ¶2, 295 Wis. 2d 189, 720 N.W.2d 114. When Gudgeon's probation time was about to expire and he had still not paid the majority of the restitution, Gudgeon's probation agent sent a letter to the circuit court, proposing that the court convert the restitution obligation to a civil judgment rather than extend Gudgeon's probation time. *Id.*, ¶3. At the bottom of the letter, the court handwrote, "No—I want his probation extended," and sent copies to the probation agent, the district attorney, and Gudgeon's attorney. *Id.* At the hearing on the extension, the court extended Gudgeon's probation. *Id.*, ¶4. Gudgeon appealed, and this court concluded that "the extension hearing violated

11

[Gudgeon's] due process right to an impartial tribunal," based on the appearance of bias created by the court's note on the probation agent's letter. *Id.*, ¶26. Specifically, this court concluded that an "ordinary reasonable person would discern a great risk that the [circuit] court in this case had already made up its mind to extend probation long before the … hearing took place." *Id.*

¶26 In *Goodson*, the circuit court withheld sentence on two charges against Goodson and told Goodson, "'[I]f you deviate one inch from these rules, and you may think I'm kidding, but I'm not, you will come back here, and you will be given the maximum, period.'" *Goodson*, 320 Wis. 2d 166, ¶2. Goodson violated the terms of his extended supervision, and at his reconfinement hearing, "the court described its decision as 'pretty easy' and ordered Goodson reconfined for the maximum period of time available," explaining that the sentence was appropriate "'because that's the agreement you and I had back at the time that you were sentenced.'" *Id.*, ¶5. This court concluded that the circuit court's statements and actions created the appearance of bias because a "reasonable person would conclude that a judge would intend to keep [the judge's] … promise—that the judge had made up his mind about Goodson's sentence before the reconfinement hearing." *Id.*, ¶13.

¶27 Here, in contrast, our review of the record does not reveal any statement or action by the circuit court that suggests the court "made up [its] mind" about the outcome of the motion before the hearing. *See id.* Schworck appears to assert that the court's statement, "Whatever you're asking for this morning, it's denied," meant that the court was denying Schworck's brief in opposition to Okello's motion, or, in other words, granting Okello's motion. The record does not support this assertion. The court's denial of Schworck's attempt to object at the beginning of the hearing, which, as stated, is the only evidence

Schworck cites in support of his assertion, would not cause a reasonable person to "discern a great risk that the [circuit] court … had already made up its mind" on Okello's motion. *See Gudgeon*, 295 Wis. 2d 189, ¶26. To the contrary, to the extent that Schworck was attempting to object to the holding of the hearing, the court's denying such an objection signaled the court's intent to hear both parties' testimony and evidence before deciding the motion. Indeed, the court explicitly said that it "want[ed] to get to the merits and address a motion that[] [had] been pending for over a year."[5] The court also said, when granting Okello's motion at the end of the hearing, that "even at the break time … I had no idea what I was going to do," providing further indication that it did not prejudge the outcome of the motion. A reasonable person would not discern from this record that the court prejudged the outcome of the motion.

¶28 The record as summarized above also does not support Schworck's assertion that he was "prevented from making a record of why he believed and posed that the [circuit] court should dismiss [Okello]'s [m]otion." As stated, over the course of the hearing, the court asked Schworck at least three times if there was anything else Schworck wanted to say. The court also explicitly told Schworck that Schworck's "response in opposition" to Okello's motion had been received and reviewed by the court, and that the court understood Schworck to be relying on his arguments in that document. Schworck was given ample

---

[5] Separately, Schworck asserts that he was denied due process because he "had [to] endure a trial/evidentiary hearing on a motion filed by [Okello] that [Schworck] believed should have been dismissed." The only case Schworck cites in support of this assertion, *Brown County v. Shannon R.*, 2005 WI 160, 286 Wis. 2d 278, 706 N.W.2d 269, is inapposite. Given Schworck's failure to support this assertion with relevant legal authority, we do not further consider it. *See Young v. Young*, 124 Wis. 2d 306, 312, 369 N.W.2d 178 (Ct. App. 1985) (this court will not "consider an argument without legal authority specifically supporting the relevant propositions").

opportunity to make a record for his position that the court should deny Okello's motion.

¶29 In sum on this issue, Schworck fails to identify, and our review of the record does not reveal, statements or actions by the circuit court that would cause a reasonable observer to believe that the court prejudged the outcome of the motion hearing or that the court prevented Schworck from making a record in opposition to Okello's motion. Thus, Schworck has not met his burden to show by a preponderance of the evidence that the court's actions created the appearance of bias, nor that there were "'objective facts demonstrating … the [circuit court] in fact treated [Schworck] unfairly.'" *See **Goodson***, 320 Wis. 2d 166, ¶9 (quoted source omitted).

## *B. Acted as an advocate*

¶30 Schworck argues that the circuit court revealed bias because it "departed from the level of neutrality and … acted as [Okello]'s counsel by taking legal positions and making legal arguments that [Okello] never raised." In support of this argument, Schworck points to the court explaining to Schworck that hearsay statements by school officials are inadmissible, as well as to the court questioning Schworck throughout the hearing.

¶31 Schworck asserts that the circuit court showed bias by "[d]irectly and indirectly providing legal advice to [Okello] and her counsel," citing to the court's exclusion of out-of-court statements by school personnel that Schworck attempted to introduce. Schworck cites no legal authority in support of his assertion that a circuit court exhibits bias by explaining the rules of evidence and enforcing those rules by excluding inadmissible hearsay evidence. Accordingly, we do not consider this argument further. *See **Industrial Risk Insurers v.***

14

*American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (providing that we need not consider "[a]rguments unsupported by legal authority").

¶32    Schworck also argues that the circuit court showed bias based on its questioning of Schworck.  WISCONSIN STAT. § 906.14 gives the circuit court the authority to call and question witnesses:

> (1) CALLING BY JUDGE. The judge may, on the judge's own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.
>
> (2) INTERROGATION BY JUDGE. The judge may interrogate witnesses, whether called by the judge or by a party.
>
> (3) OBJECTIONS. Objections to the calling of witnesses by the judge or to interrogation by the judge may be made at the time or at the next available opportunity when the jury is not present.

There are, however, limitations on this authority.  *See State v. Garner*, 54 Wis. 2d 100, 104, 194 N.W.2d 649 (1972) ("A trial judge while exercising [the judge's] limited discretion to call and examine a witness should not function as a partisan…. [E]ven where there is no jury, the judge should not take an active role in trying the case[.]"); *State v. Driscoll*, 263 Wis. 230, 237-38, 56 N.W.2d 788 (1953) ("'The right of a trial judge … to examine or cross-examine a witness cannot be doubted.  It is a right that is sometimes most valuable in the administration of justice, *but it should be most carefully exercised, and the questions put should not betray bias or prejudice, nor carry to the jury the impression that the judge has made up [the judge's] mind as to the facts*.  The questions should be framed to make clear that which is not clear.  Within these limits there can be no just fault found with the fact that the trial judge asks some

questions of a witness.'" (emphasis in *Driscoll*) (quoting *Komp v. State*, 129 Wis. 20, 24, 108 N.W. 46 (1906))).

¶33 Schworck asserts that the circuit court gave him "an ultimatum" by asking Schworck to renounce his desire and intent to have Okello deported. As stated, the court did ask Schworck whether he planned to renounce his desire and intent to have Okello deported. The court explained to Schworck that his answer to this question was directly relevant to whether the court would have a basis to deny Okello's motion, and that if Schworck did not answer in the affirmative, the court would grant Okello's motion because of the effect of Schworck's threats on the parties' ability to communicate effectively regarding their child's education. Schworck cites no authority precluding a circuit court from explaining what factors the court is considering when deciding a legal custody modification order and providing a party with the opportunity to agree to follow a course of conduct that would obviate the need for modification, and the existence of any such authority would surprise us.

¶34 As the circuit court explained at the hearing, it made its decision to grant Okello's motion in part because of the lack of meaningful communication between the parties due to what the court credited as Schworck's repeated threats to "get a warrant" and have Okello deported, as well as the "corrosive effect" these threats had on the parties' relationship and on their child's best interest. The court asked Schworck whether he planned to pursue talk of a warrant or deportation, because if he did not pursue that talk, the court would have more confidence that the parties might be able to "make a collegial coordinated co-parenting decision on" their child's education.

¶35 Further, Schworck did not object to the court's questioning of him along these lines during the hearing. We conclude that Schworck's failure to object to the circuit court's questioning of him during the hearing is yet another defect in his argument that the court showed bias based on that questioning. Subsection (3) of WIS. STAT. § 906.14 authorizes parties to object to a circuit court's calling and questioning of witnesses either "at the time [of the circuit court's action] or at the next available opportunity when the jury is not present." Sec. 906.14(3). By failing to object to the court's line of inquiry regarding Schworck's plans regarding talk of deportation, Schworck forfeited his right to challenge the court's questioning, and he fails to provide a persuasive reason that we should entertain the argument despite his failure to preserve that challenge in the circuit court. *See State v. Carprue*, 2004 WI 111, ¶46, 274 Wis. 2d 656, 683 N.W.2d 31 ("A [party's] failure to promptly raise concerns or object when [the party] believes a judge is committing error constitutes waiver."[6]); *Townsend v. Massey*, 2011 WI App 160, ¶25, 338 Wis. 2d 114, 808 N.W.2d 155 ("[T]he 'fundamental' forfeiture inquiry is whether a legal argument or theory was raised

---

[6] Although our case law sometimes refers to "the waiver rule," *see, e.g.*, *State v. Huebner*, 2000 WI 59, ¶11 n.2, 235 Wis. 2d 486, 611 N.W.2d 727, "the forfeiture rule" is a more fitting label, *see State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 ("'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'" (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993))).

before the circuit court, as opposed to being raised for the first time on appeal in a way that would 'blindside' the circuit court.").[7]

¶36     In sum on this issue, Schworck fails to show that the circuit court exhibited bias by excluding inadmissible hearsay evidence or questioning Schworck.

## II.  Granting Impasse Authority

¶37     Schworck argues that the circuit court erred when it granted Okello's motion because the facts presented at the hearing do not meet the standard for modifying legal custody.  Specifically, Schworck argues that the court erred by considering facts that were "stale," and that the record does not support either that there was a substantial change of circumstances or that the modification is in the best interest of the parties' child.[8]  We now summarize the legal principles pertaining to modification of legal custody and the applicable standards of review, and then explain why we reject Schworck's arguments.

---

[7] Apparently related to his challenge to this line of questioning by the circuit court, Schworck asserts for the first time in his reply brief that the court's orders are "unlawful, irrational, and void" because they attempt to "basically grant an immunity from the [n]ation's immigration laws by judicial fiat."  Not only is this assertion not developed into a supported argument, we also "'need not address arguments that are … raised for the first time in the reply brief,'" and, accordingly, we discuss this assertion no further.  *See Van Oudenhoven v. DOJ*, 2024 WI App 38, ¶34, 413 Wis. 2d 15, 10 N.W.3d 402 (quoted source omitted).

[8] We ignore Schworck's citations to two unpublished per curiam opinions of this court related to this topic.  Although an unpublished authored court of appeals opinion released after July 1, 2009, may be cited for persuasive value, a per curiam opinion is not an authored opinion for purposes of the rule.  *See* WIS. STAT. RULE 809.23(3)(a)-(b).  An unpublished per curiam opinion may not be cited "except to support a claim of claim preclusion, issue preclusion, or the law of the case."  *See id.*  Accordingly, we disregard any argument relying on the unpublished per curiam decisions.

¶38    WISCONSIN STAT. § 767.451(b) provides that "a court may modify an order of legal custody … if the court finds" both that "[t]here has been a substantial change of circumstances since the entry of the last order affecting legal custody" and that "[t]he modification is in the best interest of the child."

¶39    Whether a party has shown a substantial change of circumstances is a question of law that we review de novo. *Greene v. Hahn*, 2004 WI App 214, ¶23, 277 Wis. 2d 473, 689 N.W.2d 657. "When doing so, however, we must 'give weight to a [circuit] court's decision' because the determination is 'heavily dependent upon an interpretation and analysis of underlying facts.'" *Id.* (quoting *Harris v. Harris*, 141 Wis. 2d 569, 574-75, 415 N.W.2d 586 (Ct. App. 1987)). The court's findings of fact regarding the circumstances at the time of the last order and the circumstances at the time of the motion for modification will not be overturned unless they are clearly erroneous. *Lofthus v. Lofthus*, 2004 WI App 65, ¶17, 270 Wis. 2d 515, 678 N.W.2d 393.

¶40    The decision to modify legal custody under WIS. STAT. § 767.451(b) is within the circuit court's discretion, and we will not reverse the court's decision unless the court erroneously exercises its discretion. *Stephanie R.N. v. Wendy L.D.*, 174 Wis. 2d 745, 764, 498 N.W.2d 235 (1993); *Shulka v. Sikraji*, 2014 WI App 113, ¶25, 358 Wis. 2d 639, 856 N.W.2d 617. With respect to that decision, "we consider whether the [circuit] court has properly considered and weighed the appropriate factors to determine what is in the child's best interest, using the erroneous exercise of discretion standard." *Pero v. Lucas*, 2006 WI App 112, ¶23, 293 Wis. 2d 781, 718 N.W.2d 184. In other words, we will not disturb the court's decision "unless the court incorrectly applied the law, misinterpreted or overlooked relevant facts or otherwise failed to reason its way to a decision that a reasonable judge could reach." *Greene*, 277 Wis. 2d 473, ¶9.

¶41     The circuit court did not explicitly state that the facts as found by the court constituted a substantial change of circumstances since the prior legal custody order in November 2020, but that determination is implicit in the court's remarks. Regardless, on our de novo review, we conclude that the following facts found by the court, none of which Schworck shows are clearly erroneous, constitute a substantial change of circumstances that had occurred since the prior legal custody order: Schworck's multiple weeks- or months-long trips to Kenya with only a week's notice to Okello between 2021 and 2023, leaving Okello "primarily responsible for the minor child's care, including transporting [the child] to and from school"; the likelihood that Schworck will continue to make such extended, last-minute trips in the future; Schworck's repeated "threats" regarding Okello's immigration status or extradition, occurring in June, July, and August of 2022, as well as in January of 2023, made when Okello attempted to communicate about their child; and the likelihood that Schworck will "continue to make threats."

¶42     Schworck's assertion that these facts are "stale" is not supported by the record. Although the previous trips to Kenya and the "threats" occurred months before the hearing, Schworck fails to show that the circuit court's finding that both of these patterns would continue is clearly erroneous, and this finding supports the conclusion that there was a substantial change of circumstances.

¶43     Having concluded that there was a substantial change of circumstances, we now review whether the circuit court erroneously exercised its discretion in granting Okello's motion to modify legal custody by granting her impasse-breaking authority over the child's school enrollment. While the court did not affirmatively state that granting Okello impasse-breaking authority over school enrollment is in the best interest of the child, this determination is implicit

in the court's remarks. For example, the court said that Schworck's repeated travel out of the country with little notice to Okello and his repeated threats whenever Okello raised "school-related custodial issues" are "never in [the child's] best interest." As we now explain, reviewing the court's remarks as a whole, it is evident that the court applied the correct law, examined the relevant facts, and "reason[ed] its way to a decision that a reasonable judge could reach." *See Greene*, 277 Wis. 2d 473, ¶9.

¶44 When making determinations regarding legal custody, the circuit court "shall consider all facts relevant to the best interest of the child," including: "[t]he cooperation and communication between the parties and whether either party unreasonably refuses to cooperate or communicate with the other party," WIS. STAT. § 767.41(5)(am)3.; "[w]hether each party can support the other party's relationship with the child, … or whether one party is likely to unreasonably interfere with the child's continuing relationship with the other party," § 767.41(5)(am)4.; "[t]he child's adjustment to the home, school, religion, and community," § 767.41(5)(am)8.; and "[a]ny other factor that the court determines to be relevant," § 767.41(5)(am)14. Sec. 767.41(5)(am).[9]

---

[9] The full list of factors in WIS. STAT. § 767.41(5)(am) is as follows:

> 1. The wishes of the child's parent or parents, as shown by any stipulation between the parties, any proposed parenting plan or any legal custody or physical placement proposal submitted to the court at trial.
> 2. The wishes of the child, which may be communicated by the child or through the child's guardian ad litem or other appropriate professional.
> 3. The cooperation and communication between the parties and whether either party unreasonably refuses to cooperate or communicate with the other party.

(continued)

4. Whether each party can support the other party's relationship with the child, including encouraging and facilitating frequent and continuing contact with the child, or whether one party is likely to unreasonably interfere with the child's continuing relationship with the other party.

5. The interaction and interrelationship of the child with his or her siblings, and any other person who may significantly affect the child's best interest.

6. The interaction and interrelationship of the child with his or her parent or parents and the amount and quality of time that each parent has spent with the child in the past, any necessary changes to the parents' custodial roles, and any reasonable lifestyle changes that a parent proposes to make to maximize placement with the child.

7. Whether any of the following has or had a significant problem with alcohol or drug abuse:

a. A party.

b. A person with whom a parent of the child has a dating relationship, as defined in s. 813.12 (1) (ag).

c. A person who resides, has resided, or will reside regularly or intermittently in a proposed custodial household.

8. The child's adjustment to the home, school, religion, and community.

9. The age of the child and the child's developmental and educational needs at different ages.

10. Whether the mental or physical health of a party, minor child, or other person living in a proposed custodial household negatively affects the child's intellectual, physical, or emotional well-being.

11. Whether any of the following has a criminal record or whether there is evidence that any of the following has engaged in abuse, as defined in s. 813.122 (1) (a), of the child or any other child or neglected the child or any other child:

a. A party.

b. A person with whom a parent of the child has a dating relationship, as defined in s. 813.12 (1) (ag).

c. A person who resides, has resided, or will reside regularly or intermittently in a proposed custodial household.

12. Whether there is evidence of interspousal battery, as described under s. 940.19 or 940.20 (1m), or domestic abuse, as defined in s. 813.12 (1) (am).

13. The reports of appropriate professionals if admitted into evidence.

14. Any other factor that the court determines to be relevant.

22

¶45    Here, the circuit court considered in a reasonable manner relevant factors. As stated, the court found that "the communication between the parties is poor," referencing Schworck's lack of meaningful responses to Okello's attempts to discuss their child's "school-related custodial issues" and instead his "bringing up [Okello's] immigration status, her potential deportation, and [Schworck's] wishes to travel to Kenya with the minor child." *See* WIS. STAT. § 767.41(5)(am)3. The court found that Schworck's "ongoing threats unreasonably affect the parties' ability to effectively coparent." The court also considered how Schworck's threats and any action on those threats may interfere with Okello's relationship with their child. *See* § 767.41(5)(am)4. Additionally, the court considered the child's experience and adjustment in the current school placement. *See* § 767.41(5)(am)8. The court also determined that it was relevant that providing Okello with impasse-breaking authority would place her on a more equal footing with Schworck to prevent Schworck's threats from derailing the parties' communication on school-related issues. *See* § 767.41(5)(am)14.

¶46    After reviewing the relevant facts regarding the parties' parenting relationship and communication, the effects of the parties' travel schedules on their child's ability to get to school, the child's experience in the current school district, and what the circuit court found to be the "corrosive effect" of Schworck's threats on the parties' relationship that is "never in the child's best interest," the circuit court concluded that awarding Okello impasse-breaking authority regarding school enrollment would facilitate "legitimate co-parenting negotiations" to determine what is in the child's best interest. Based on all of these findings of fact, the court implicitly found that giving Okello impasse-breaking authority over school enrollment is in the best interest of the child. Schworck fails to show that

this is not a reasonable conclusion. Accordingly, we will not overturn this discretionary decision on appeal. *See Greene*, 277 Wis. 2d 473, ¶9.

### III. Costs for a Frivolous Appeal

¶47 Okello has filed a motion in this court seeking costs and fees for a frivolous appeal pursuant to WIS. STAT. RULE 809.25(3). She contends that Schworck knew or should have known that his appeal has no reasonable basis in law or equity and cannot be supported by a good faith argument for the reversal of existing law.

¶48 "The question of whether an appeal is frivolous is decided by this court as a matter of law," *Grochowski v. Larson*, 196 Wis. 2d 231, 236, 538 N.W.2d 802 (Ct. App. 1995), and we cannot award costs under WIS. STAT. RULE 809.25(3) unless the entire appeal is frivolous, *Thompson v. Ouellette*, 2023 WI App 7, ¶3, 406 Wis. 2d 99, 986 N.W.2d 338. We are not convinced that the record reflects that Schworck should have known that his entire appeal is "without any reasonable basis in law" and cannot "be supported by a good faith argument for an extension, modification or reversal of existing law." *See* RULE 809.25(3). Accordingly, we deny Okello's motion for costs for a frivolous appeal.

### CONCLUSION

¶49 For the reasons stated above, we affirm.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.